ROBERT CRANE and JOHN A. CRANE, Ex'crs of GEORGE CRANE, *vs.* DIXON GOUGH, Adm'r of MARY CRANE.

Notes and bonds belonging, and payable, to the wife before marriage, devolve upon the husband *jure mariti*, and he may reduce them into possession by collecting the money, obtaining judgment, or exchanging them for other securities, but if he does neither during his life, they go to the representatives of the wife.

A *parol ante-nuptial* agreement that the husband was to have the wife's notes and bonds, and allow her the interest on them for pin-money if *executed*, is valid, and sufficient to enable the representatives of the husband to *defend their possession* of such bonds and notes, though not reduced into possession, against the representatives of the wife.

The fourth section of the statute of frauds does not render such contracts *void*, but merely inhibits *an action* on them; if *executed*, they are as valid as if made in writing, and a party may always *defend* under such a contract when sued for any act done under it.

The declarations and admissions of the wife both before and after marriage, though not made in the presence of the husband, of the *making* and *execution* of such a contract, are admissible against her representatives seeking to recover the bonds from the representatives of the husband.

A decree for a specific performance is not *ex debito justitiæ*, but a matter resting in the wholesome and equitable discretion of the court.

Though the court may refuse to decree the specific performance of a contract devoid of mutuality, yet where the party charged admits the contract and professes a willingness to perform it, if its terms be not immoral or opposed to the policy of the law, equity never interferes in his behalf.

The wife could have filed a bill against her husband for the specific execution of the contract in this case, and upon proof of the making of it, and delivery of the bonds in pursuance of it, a court of equity would have decreed the payment of the interest to her.

There are many cases where a court of equity will not exert its powers to enable a party to acquire possession of a thing, but in which it will nevertheless refuse to disturb the possession when obtained without its agency.

Though marriage is not, *per se*, a part performance sufficient to take a parol *ante-nuptial* contract out of the statute of frauds, it is yet a sufficient *consideration* for the contract, and one which courts regard with special favor as of most meritorious character.

An *equitable* assignment of a chose in action may be by parol.

APPEAL from the Court of Chancery.

This appeal is from a decree of the chancellor, (*Johnson*,) directing the appellants to deliver up to the appellee certain bonds in their possession, under the circumstances stated in the bill and answer. The allegations of the bill and answer, and the proof in the case, are so fully stated in the opinion of this court, as well as in 3 *Md. Ch. Decisions*, 119, where the chancellor's opinion is reported, as to render any additional statement unnecessary.

The cause was argued before LE GRAND, C. J., MASON J., and TUCK, J.

*A. Randall* for the appellants.

1st. The testimony, especially that of Mrs. Drury and Dr. Jones, establishes the *fact* of an *ante-nuptial* agreement made in consideration of the contemplated marriage between Mrs. Gough and Col. Crane, and giving to the latter upon the marriage the title to the bonds in controversy. According to the testimony of Mrs. Drury, Mrs. Gough herself stated, a short time previous to the marriage, that there was *a bargain* between her and Col. Crane; that her property was to go to Col. Crane and *his children.* This shows her *intent.* The evidence also is sufficient to establish the fact that said bonds were under said agreement *delivered* by Mrs. Gough to Col. Crane before their marriage, or, at all events, about the time of the marriage. Jones, one of the obligors in the bonds, wanted to pay the bond to Mrs. Gough before the marriage, but she refused to receive it, saying to him that it was the property of Col. Crane. Mrs. Gough told Mrs. Drury she *had delivered* them to Crane. Why should she refuse to receive payment of the bonds, if they were in her possession and were her property? But again, the evidence of the agreement and delivery, by the admissions of Mrs. Gough, is admissible, apart from the statute of frauds, to establish the facts of such agreement and delivery, and is sufficient under that statute to take the case out of it, if the facts so admitted will suffice in law for that purpose. Where there has been part performance parol proof is admissible. 1 *Md. Rep.,* 93, *Bowie vs. Bowie.* 3 *Gill,* 278. 3 *G. & J.,* 218. We are defending a title, not asking the active interference of the court. The authorities all show that the admissions of the party to be charged are binding upon him. 4 *Call.,* 231. 1 *Greenlf. on Ev., sec.* 189. 56 *Law Lib.,* 32. *Chitty on Contracts,* 21, 22.

2nd. The objection of the statute of frauds is not properly taken. It must be taken in the answer or it will be consid-

ered as waived. 5 *H. & J.*, 383. 1 *Bland*, 284. Again, the exception does not cover the whole testimony, and is so indefinite that it cannot be applied to any part of it. *Act of 1832, ch.* 302, *sec.* 8. The reply of Mrs. Drury to the *cross-interrogatory* could not be excepted to, and must stand without objection in this court. 7 *G. & J.*, 202, 397, 398. 3 *Gill*, 269. 3 *Md. Ch. Decisions*, 109. But if the objection is properly taken it cannot avail, because the agreement, as admitted, being made in contemplation of marriage between the parties to it, is founded on a valuable consideration, and if accompanied or followed by any act of part performance, entitles the husband or his representative to its specific enforcement, and therefore, *a fortiori*, entitles him or them to defend and maintain under it their existing possession of the bonds. The delivery of the bonds, as proved by the admissions of Mrs. Gough, is an act of part performance sufficient for that purpose, and, at all events, entitles the appellants to retain their possession. Mere delivery under such an agreement, without any written assignment, was of itself a complete equitable assignment, vesting the title in equity in the husband upon the marriage. In support of these propositions, see *Dugan vs. Gittings*, 3 *Gill*, 156, 157. 2 *Peere Wms.*, 243. 2 *Story's Eq.*, *sec.* 739. 2 *Vernon*, 480. 72 *Law Lib.*, 229. 1 *Bac. Abr.*, 383. 67 *Law Lib.*, 68. 9 *Gill*, 32, *Sheppard vs. Bevans.* 14 *Eng. Law and Eq. Rep.*, 247. 1 *Md. Rep.*, 97, 98. 14 *Pick.*, 245.

3rd. This not being a case in which an action is brought upon the agreement, to *charge* the wife or her representatives, but by the wife's representative against the husband's representatives, and the agreement is set up by the latter for the purpose of defending their title to the bonds already in their possession, the statute of frauds, which does not declare such a parol agreement *void*, but only precludes an action upon it to charge the party relying upon the statute, is therefore not applicable to the case. *Roberts on Frauds*, 91. The language used in the fourth section is, that no action shall be brought whereby *to charge* any person, &c., and is different

from that of the other sections by which certain contracts are made absolutely null and void. See also on this point 56 *Law Lib.*, 30, 33. 29 *Eng. C. L. Rep.*, 474. 1 *Md. Rep.*, 94, 95, 97, 98. 13 *Pick.*, 4. 6 *Vermont*, 383, 386. 5 *Littell*, 98. 14 *Eng. Law and Eq. Rep.*, 247.

4th. The objection to the jurisdiction, as presented by the appellants' exception in the court below, was in due time, and properly taken, and ought to have been allowed. That the exception need not be taken by answer, but may be made at the hearing, see 2 *H. & J.*, 67, 68. 4 *H. & J.*, 46. 11 *G. & J.*, 442. 12 *G. & J.*, 479, 480, 484. *Act of* 1841, *ch.* 163. *Baldwin's Rep.*, 411 to 417. 12 *Eng. Cond. Ch. Rep.*, 472. 1 *Bailey's Eq. Rep.*, 62. That the remedy was at law, see 1 *H. & J.*, 138. 4 *H. & J.*, 30. 7 *G. & J.*, 270. 9 *G. & J.*, 95. 1 *Chitty's Pl.*, 148, *note* 1. Special causes for the inadequacy of the legal remedy are not to be presumed, but must be proved by the complainant. 2 *H. & J.*, 68, 69. 7 *G. & J.*, 118. 1 *Bailey's Eq. Rep.*, 62. No case can be found in which equity has jurisdiction over a mere *monied bond. Mitford's Pl.*, 55. 3 *Madd. Ch. Rep.*, 182. 1 *Madd. Ch. Rep.*, 183. 6 *Wharton*, 144.

*J. M. S. Causin* for the appellee.

It is not essential that exceptions to testimony should state the grounds upon which they are taken, and even though wrong grounds be assigned, still if the testimony be objectionable upon any grounds it will be rejected. 7 *G. & J.*, 202. It is only necessary to apprise the opposite party of the *evidence* excepted to. We therefore insist:

1st. That there is no sufficient legal admissible evidence of an agreement in consideration of marriage and of its terms, so as to bind both the parties to it. Col. Crane was not present when the conversations detailed by the witnesses was held. The contract itself must be clear, certain, definite and mutual, (*Story's Eq.*, *sec.* 764,) and the proof to sustain it clear, unequivocal and satisfactory. 1 *Md. Ch. Decisions*, 120. 9 *Gill*, 41. The evidence in this case is not of that char-

Crane *vs.* Gough.

acter; Mrs. Drury does not mean to say that Mrs. Gough stated she had parted with the bonds, because she says she had them *up to the time* of the marriage.   She used the word *give* in the same sense as when she said she had *given* her negroes to Col. Crane.   But if any agreement was made it was merely by parol, and void under the statute of frauds, which is favored in courts of equity, (65 *Law Lib.*, 527, 528,) and there is no such part performance by Crane as to authorise the court to carry it into effect.   The only act performed by him was the marriage, which constitutes no part performance.   1 *Peere Wms.*, 618.   1 *Ves.*, 198.

2nd. If the surrender of the bonds of Mrs. Gough could, under any circumstances, be considered a part performance of the agreement, it would not avail in this case, because from the evidence it appears they were given up after the marriage, when she had no right to retain them, and when the act of surrender could not be referred solely to the agreement. *Story's Eq.*, sec. 762.   Mrs. Drury's testimony is at variance with itself, and utterly *irreconcilable*.   The acts of part performance must be referable exclusively to the contract proved. The answer says, the delivery of the bonds was in consequence of the marriage, and this would be his right and her duty apart from any contract.   But it is said, the statute of frauds does not apply, because the appellants are defendants. They are in fact complainants, and asking the court to aid them.   They bring this parol contract into court, and we are the parties *charged*, and therefore come within the statute. They seek a remedy—they charge us with breaking the contract and seek relief upon it.   The statute asserts, that such a contract shall not be *enforced*, and there is no case where a contract which cannot be *asserted* can be *set up* as a *defence* and the party receive the benefit of it.

3rd. The proper remedy in this case was by bill in equity, the remedy at law being imperfect.   Unless the want of jurisdiction is perfectly clear the case will not be sent back, for no benefit will result therefrom—in fact no benefit will result to any one from a reversal upon the ground of want of *jurisdic-*

41      v.4

*tion*, for if the contract is *void* we only have to go to law, and if *good* the plea is of no use, for the appellants succeed. The objection was made after the argument *was commenced* in the court below, and it is time some check should be given to such practice. But equity has jurisdiction:—1st. In order to avoid *multiplicity of suits*. 2nd. We seek no damages but the specific articles. 65 *Law Lib.*, 539. We prefer the words. *Trover* would not have availed us as the parties might have been irresponsible, and the bonds are yet unassigned. Neither would *replevin*. That equity has jurisdiction to decree the delivery of specific things, such as bonds, mortgages, &c., see 65 *Law Lib.*, 533, 545. 2 *Atk.*, 306.

*John Nelson* on the same side.

The case presents three questions:—1st, the rights of the parties independent of the alleged contract; 2nd, their rights under the contract, as whether it has been proved or not or part performed or not? and 3rd, the question of jurisdiction.

1st. Upon the first point there is no need of argument, for it is admitted that the appellees are, under the act of 1798, ch. 101, independent of any contract, entitled to the bonds, they being unassigned and not reduced into possession during the life of the husband.

2nd. The second is the material point in the case. Has the contract been sufficiently proved or part performed so as to take it out of the statute of frauds? It is said, that as the defendants are not seeking the aid of a court of equity to enforce the contract, their possession of the bonds is a sufficient defence to the bill. *Bowie's case*, in 1 *Md. Rep.*, 87, was one of an *executed* contract, and therefore withdrawn from the statute of frauds. In 13 *Pick.*, 4, there was *actual performance* on both sides. 6 *Vermont*, 383, is put upon the ground of *performance*, for it says, so far as the contract has been *performed*, you may *defend* under it. Such is also the character of the cases in 56 *Law Lib.*, 30, 33. The complainants here are not seeking to enforce any agreement, but come in simply upon their *legal* rights. The defendants

admit all that is sufficient to establish those rights, but set up in avoidance an *ante-nuptial* contract, and claim by force of it, and is it not incumbent on them to prove, by legal evidence, the existence of the contract and its legal validity? So far as this allegation is concerned *they* are the *active* parties, and it makes no difference whether they stand on the docket as plaintiffs or defendants. There may be some difficulty in cases of *specific performance*, as to the *strength* of the proof required, but so far as the existence of the contract itself and its legal validity are concerned, there can be no difference whether the parties *asserting it* are complainants or defendants. But again, the answer sets up the contract, and *asks* the court to *decree* the *endorsement* of the bonds over to them, and in this respect it is in the nature of a bill to seek the *specific performance* of this contract; it is in the nature of a *cross-bill*, (*Cooper's Eq. Pl.*, 85,) and specific performance would be decreed upon it as well as upon a bill filed. 13 *Ves.*, 546. There is, therefore, upon every view, nothing to exempt the defendants from the proof of this contract.

This being so, the material inquiry recurs, whether a contract exists, and if by parol, whether it has been so far part performed as to take it out of the statute? The rule as to the proof in such cases is, that it must be clear and satisfactory of the contract set out in the bill, and the part performance must be of *that* identical contract. 1 *Md. Ch. Decisions*, 120. *Story's Eq.*, sec. 762. 9 *Gill*, 32, *Sheppard vs. Bevans.* Marriage is no part performance. 1 *Peere Wms.*, 618. The contract must be clear and definite, and the acts done equally clear and definite, and referable *exclusively* to the contract's being performed. In the absence of any contract, the bonds would have become, by the marriage, the absolute property of the husband, and he would be bound to pay the wife nothing. The alleged contract was, therefore, in derogation of his rights, for he was to allow her the interest on the bonds for pin money. Now there is no evidence that he ever did this, although he received the interest from year to year. There can, then, be nothing in the possession of the bonds to show

that their delivery was made under the contract.    But there is no evidence of the mutual promise *to marry*, except that inferrible from the marriage *itself.*    The whole testimony is uncertain and inconclusive.    Mrs. Drury states that the bonds *"had been given up,"* but Jones says there was an agreement, that Col. Crane *"was to have"* them in consideration of *pin money.*    From this it is apparent there was *no delivery.*    Again, Mrs. Drury says the notes were in possession of *Mrs. Gough up to the* time of the marriage.

3rd.  Exception is taken to the jurisdiction of equity, upon the ground that the title is a legal one and the remedy is at law.  'This case, in some of its circumstances, is one of *first impression.*    It is that of a party being in possession of property *quasi* trustee, against others who are also *quasi* trustees,—the administrators of the two estates.    What is the remedy at law?    An action of *trover* against the executors as *tort feasors*, in their individual character? would this be an *adequate* remedy?    The plaintiffs could only recover damages for the detention, and this might or might not be *adequate; non constat*, they would be able to respond to the judgment.

The analagous cases sustain the jurisdiction.    2 *Atk.*, 306.  But if the answer be in the nature of a cross-bill, there can be no objection to the jurisdiction, for then the *defendants* have themselves asked the aid of the court.

*John V. L. McMahon* for the appellants, in reply.

The bill alleges that the bonds were unassigned, either before or after the marriage.    The *defendants* by their answer claim under the agreement which looked to the delivery of the bonds at the time of marriage.

The complainant, by his own cross-interrogatory, brings it out that *Mrs. Gough* said she "had given up" her bonds to Col. Crane.    Dr. Jones tendered her payment of one of the bonds, which she refused, saying she "had made the bargain, and that Col. Crane was to have it," and again that her "lockett was the only property she had, all the rest belonged to Col. Crane."    If there is any reliance to be placed on

human testimony, the *factum* of the agreement, and the *intent* and *object* of the parties is clearly proved. The wife lived and died in the belief that she had perfected the agreement. The husband agrees to waive his marital rights over the bonds, and it was therefore a meritorious contract on the part of the husband. Suppose the case *was reversed*, and the wife was here upon the same evidence claiming the interest on the bonds, what would be the decision of this case then?

1st. It is a concession that the agreement was made in consideration of *marriage*. The terms are known, the construction settled. As to delivery Mrs. Drury says she "*had given*," and again "*had given up*" the bonds. Mr. Jones says the husband "*was to have the bonds*,"—this is not contradictory, he was to have *the title*. But suppose this evidence is all given up, the delivery still can be made out *inferentially*, (3 *Gill*, 278. 1 *Md. Rep.*, 94, 95, 97, 98.) even in a case where the facts might lead the mind to other conclusions. We have their own proof of the wife's declarations that she had delivered them up. The law presumes that the agreement continues, and that the marriage was made in pursuance of it. The bonds are found in his possession, and the presumption is that he received them under the agreement. You must infer that the delivery and receipt of the bonds was under the agreement, unless you impute a fraud to the husband. They married under the agreement, and she says that she surrendered them as *her act*, not *as wife*.

There can be no objection to the testimony of Jones—the declarations and admissions of the party himself are good as against him. She admits the contract and the engagement to marry, and it is said this cannot be used against her. The fact of possession is sufficient to establish the delivery inferentially. If there had been a written contract, the delivery could have been made under it *after* marriage, and suppose he had refused to receive them, could he not be compelled to do so? What difference does the statute of frauds make If she is competent to deliver, she is competent *to admit*. If there was a delivery under the contract, whether before or

after the marriage, it is good, and makes a consummate title to the bonds.

2nd. If the statute of frauds cannot be invoked for any cause whatever into the case, there is an end to any objection to this title? Is the statute before this court? It must be *relied on*—it is a statute which the court does not *invoke*. If an agreement void under the statute is set up by the answer, the complainant must turn back and amend, but this is not insisted on. The general rule is that the objection must be taken at the *earliest* opportunity—they can't invoke it *here* for the first time, both upon general principles and by force of the act of 1832, ch. 302. It must *plainly appear* by the record that such exception was made. The exception is to *the testimony* on the — page. Which page? It is not for the court to *guess*—to *spell out*—what the interrogatory or testimony was. But there is no exception to the testimony of Mrs. Drury, brought out by *cross-examination*, and this proves the agreement. He could not except to this testimony, (3 *Md. Ch. Decisions*, 109,) and if he could, it is his duty to make the exception, and if he does not, it is unexceptionable evidence, and if so, the statute of frauds is out of the case altogether as a defence. Delivery of a bond confers a valid and effective equitable title to the money secured by it. If the bonds have been delivered under the contract the title is complete, and there is nothing to be performed.

3rd. The answer here is not in the nature of a cross-bill. *Mitford*, 123. Where the original bill is for a *specific performance*, the answer may be in the nature of a cross-bill, and this is the *only exception*. The language of the statute is important. It is that no action shall be *brought to charge*, &c. The general rule is not true that there are no such things as rights without a remedy. 6 *Gill*, 50. *No action shall be brought* and no *right shall exist*, are not convertible terms. The contract is not void. 6 *Vermont*, 386. 13 *Pick.*, 4. 56 *Law Lib.*, 48. 29 *Eng. C. Law*, 474. 14 *Eng. Law and Eq. Rep.*, 247. Here we are in possession of the bonds, and we want no aid from the court to enforce a

Crane *vs.* Gough.

contract—we ask only to be let alone. They want to take these bonds away from us. We are only insisting upon the contract to enable us to keep the bonds now in our hands.

4th. The encroachments of the jurisdiction of the court of equity ought to be resisted, because it is a jurisdiction confessedly inferior to the common law jurisdiction. 12 *G. & J.*, 480. Objections to jurisdiction because of subject matter are very different from those to the person. Before the act of 1841, the objection could be made in this court, no matter how the party may have slept on his rights. This act only applies to this court, and now it may be made in the court below at *any time*. The remedy at law is *adequate*. *Trover* would lie, and they would get as much from that action as they could if the bonds were assigned. They even get more, for they would get interest on *the interest*. *Replevin* would also lie. If the bonds are in the custody of the orphans court and not under our control, this bill must be dismissed. *Detinue* would lie without a bond. The law always presumes the remedy *adequate* for the end given, and that it will produce the result for which it was given, and if any special exception occurs which would render the remedy inadequate the complainant must allege it. Here the thing sued for has no value except the money due on it, and what difference does it make *who* pays it? If this jurisdiction is sustained, equity will have it in every case where chattels are withheld by executors. Where chattels are held in a *fiduciary* capacity, or are of a peculiar value not appreciable in money, they may be decreed to be delivered, but these are the only cases. Title deeds are of this class, for they are not of appreciable value in money. A court of equity, however, never orders delivery of such deeds to a person out of possession of the estate. The case in 2 *Atk.*, was the case of *a trust*—the mortgages were in the hands of a *fiduciary*. No case can be found in which the court of chancery has ever decreed the delivery of a *mere money bond.*

LE GRAND, C. J., delivered the opinion of this court.

The bill in this case was filed by the administrator of Mrs.

Crane, and substantially makes the following case.   It charges that Mrs. Crane, prior to her intermarriage with the testator of the defendant, was the owner and possessor of certain notes and bonds for the payment of money; that her husband survived her, but did not during his life reduce the same into possession by collecting the money, or by the recovery of judgment or otherwise; that the notes and bonds were payable to Mrs. Crane by the name of Gough, which she bore prior to her intermarriage with Mr. Crane, and that neither the notes nor bonds were endorsed or assigned to him or any other person.   The bill states these evidences of debt to be in the possession of the defendants, and prays a decree may be passed directing their delivery to the appellee for the benefit of the representatives and distributees of complainants.

The answer admits the possession of these securities, but insists they were made, by virtue of an ante-nuptial contract, the property of their testator.   It also admits they were neither endorsed nor assigned to Mr. Crane.

It is conceded that these securities devolved on Mr. Crane *jure mariti*, and that, by virtue thereof, he might have reduced them into possession by collecting the money, obtaining judgment, or by exchanging them for other securities.   Nor is it denied, that failing to do either, they passed to the administrator of Mrs. Crane under section 8 of sub-chapter 5 of the act of 1798, chapter 101.

The defence interposed, however, to the claim of the administrator of Mrs. Crane, arises out of the agreement set up in the answer of the defendants.   They claim the notes and bonds in virtue of an ante-nuptial contract alleged to have been made between Mrs. Crane, (then Mrs. Gough,) and her future husband, by which, in consideration of the marriage, he was to have the notes and bonds, and to allow her during her life the interest thereon as pin-money.

It is the effect of this alleged contract we are now to consider.   Independently of it, the title of the administrator is clear and indisputable under the act of 1798, chapter 101.

Two objections have been urged to the contract:—*First,*

Crane *vs.* Gough.

that there is no proof that any such was made; and *second,* that if there was such a contract made it was of no avail, because not in writing as required by the 4th section of the statute of frauds.

Upon both of these propositions we dissent from the conclusions of the chancellor. We think the testimony is sufficient to establish the existence of the contract, and also to take it out of the operation of the statute, or, at least, to enable the appellants to *defend* their possession against the claim of the appellee.

First, as to the contract. The evidence, we think, fully establishes its existence. We refer to the testimony of Mrs. Drury and Dr. R. M. Jones. In answer to the second interrogatory of the examination-in-chief Mrs. Drury says: "About three weeks before Mrs. Gough's marriage to Col. Crane, Col. Crane remained all night at Mrs. Sally Smith's on that occasion, where she, Mrs. Gough, was staying. Mrs. Gough came into Mrs. Smith's room, where she, Mrs. Smith, was sick, and said to Mrs. Smith and witness, that she and Col. Crane had made a bargain; witness asked her what the bargain was? She, Mrs. Gough, replied, that *she had given* all her notes for her money to Col. Crane, and he promised to give her the interest of them as long as she lived, and that she had said to him, 'Col., you know that when I die it is all yours.' Witness has often heard Mrs. Gough declare before her marriage to Col. Crane, that she wished no one to have her property, except Col. Crane and his children." And to the first *cross*-interrogatory she answers as follows: "She, Mrs. Gough, said she had given up the notes to Col. Crane, and he was to allow her the interest of them as long as she lived, and that she and Col. Crane were going to be married, and she wanted no one else to have her property except Col. Crane, or his children."

Dr. Randolph Jones, in answer to the second interrogatory, says: "on one occasion Mrs. Gough, (lately Mrs. Crane,) came down to his house to see a sick servant woman belonging to her, but hired by this deponent before her marriage

42    v.4

with Col. Crane, when deponent tendered her payment of a note which she held against him, which payment she refused, stating that she was shortly to be married to Col. Crane; that there was an agreement between her and Col. Crane, that he, Col. Crane, was to have all her bonds and notes, and that he was going to allow her the interest of them for pin-money; this was about three weeks previous to her marriage to Col. Crane."

To the 5th interrogatory the same witness answers: "I had a conversation with Mrs. Crane on the second or third day after her marriage to Col. Crane, in which she referred to a locket which she then wore, stating that, that locket was all the property she then had, *that she had given her notes and* negroes to the colonel, meaning Col. Crane, to whom she pointed at the same time, and that she would be no longer subject to the harrassments of collecting money and hiring out negroes. She also stated that she had no relatives that cared for her, and that she had rather that Col. Crane's children should have her property than any one she knew of."

To a portion of this testimony the complainants excepted. To a part of it on the ground that it only tends to prove a parol agreement unexecuted; and to the remainder, because it is of declarations made by complainant's intestate after marriage, and not necessarily tending to prove an ante-nuptial agreement. To the answer of Mrs. Drury to the first cross-interrogatory there is no objection.

In our opinion these exceptions are not tenable. The testimony of Mrs. Drury, in our judgment, is not confined to the proof of an unexecuted parol contract, but goes to the extent, not only of the making of the contract, but to its fulfilment also; and that of Dr. Jones both to the making of the contract and the acknowledgment by Mrs. Crane of its execution.

It was argued by counsel that these declarations of Mrs. Crane, both before and after marriage, *could have no influence* on the rights of the complainant, because they were not made in the presence of, nor assented to by, Col. Crane. In

Crane *vs.* Gough.

point of fact a portion of them were made in the presence of Col. Crane; we allude to those addressed to Dr. Jones after the marriage.

The objection seems to be founded on the idea that as Col. Crane was not bound by the declarations made out of his hearing, they can have no operation on the claims of the representatives of Mrs. Crane. To this view we cannot assent. It is true there are cases in which a court of equity, in the exercise of a wise and just discretion, will not decree a specific performance of a contract devoid of mutuality, and this is on the ground that a decree for specific performance is not *ex debito justitiæ*, but a matter resting in the wholesome and equitable discretion of the court. And, in cases where a party seeks the specific performance of a contract, which imposes all its obligations and confers none of its benefits on one of the parties, a court of equity may very properly refuse to decree its execution. But in cases where the party charged admits the contract and professes a willingness to perform it, courts of equity, if its terms be not immoral or opposed to the policy of the law, never interfere in his behalf. It is to this class of cases the one now under consideration belongs. Mrs. Crane admitted the existence of the contract and asserted her rights under it. It was a contract in restriction of the marital rights of the husband. In the case before us it is set up by way of *defence*, by the executors of the husband. If the case were reversed, how would it stand? If Mrs. Crane had filed a bill against her husband, (which she could have done, *Acton vs. Peirce*, 2 *Vernon*, 480, and *Cannel vs. Buckle*, 2 *Peere Wms.*, 243,) and proved the making of the contract in consideration of the contemplated marriage and the delivery of the notes and bonds in pursuance of it, a court of equity would not have hesitated to decree to her the payment of the interest on the securities. Of this there can be no doubt. But the case as presented to us on behalf of the executors of the husband is still stronger. They did not initiate the proceedings, but were content to repose on the possession which they claim under an *executed* contract. And although they

might not be able to sustain their right to a decree for specific performance, it does not therefore follow, that they cannot successfully vindicate the rightfulness of their possession. There are many cases where a court of equity will not exert its extraordinary functions to enable a party to acquire possession of a thing, but in which, nevertheless, it will refuse to disturb the possession when it has been obtained without its agency.

The testimony of Mrs. Drury shows that Mrs. Gough "*had given up the notes to Col. Crane,*" and the evidence of Dr. Jones is to the same effect. He says, that he had a conversation with Mrs. Crane on the second or third day after her marriage to Col. Crane, in which she referred to a locket which she then wore, stating that, "that locket was all the property she then had, *that she had given her notes and negroes to the colonel,*" *&c.*

This testimony most incontestably establishes the *factum* of the contract. But it is said it is *void* under the fourth section of the statute of frauds. That section provides, that "no action shall be brought, whereby to charge any executor or administrator, upon any special promise, to answer damages out of his own estate; or whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person; or to charge any person upon any agreement made in consideration of marriage; or upon any contract or sales of lands, tenements or hereditaments, or any interest in or concerning them; or upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto, by him properly authorized."

The provision of the section is, that *no action shall be brought* whereby to charge any person upon any agreement made in consideration of marriage, &c. It does not, as stated by the chancellor, render all such contracts *void* if they

be not in writing. It merely inhibits an action on them. If they be *fulfilled* and *executed*, they are just as valid as though they had been in writing; and the rights and property acquired under them are just as sacred and as much respected as if they had been evidenced by a writing signed by the parties. *Laythoarp vs. Bryant*, 2 *Bing. N. C.*, 735, (29 *Eng. C. L.*, 474.) The principle is very clearly stated by the Supreme Court of Vermont, in the case of *Philbrook vs. Belknap*, 6 *Vermont*, 386. Speaking of the contract then under their consideration, they use this language: "Admitting that this contract is within the terms of the statute, yet it may be well to inquire, what is the effect of the statute upon it. Although it is common to speak of a contract *void* by the statute of frauds, yet, strictly speaking, the statute does not make the contract void, *except for the* purpose of sustaining an action upon it, to enforce it. The statute provides, that no action shall be sustained upon certain contracts, unless they are evidenced by writing. It operates therefore upon the contract, *only while it is executory.* It does not make the performance of such a contract unlawful, but, if the parties choose to perform it, the contract remains in full force notwithstanding the statute, so far as relates to the legal effect and consequences of what has been done under it. *Hence a party may always defend under such a contract, when sued for any act done under it.*" To this point any number of cases might be cited.

The defendants here seek merely to *defend* their possession under the contract which they allege to have been executed. The question then is—is there proof enough to show the execution of the contract? We think there is. The declarations of Mrs. Crane prior to her marriage, went to the extent of showing that she *had given up her notes and bonds* to Col. Crane, and those made to Dr. Jones, shortly after the marriage in the presence of her husband, amount to an acknowledgment of its fulfilment. Now, although marriage is not *per se* a part performance sufficient to take a case out of the statute, it is nevertheless a sufficient *consideration* for the contract, and

one which courts regard with especial favor as of most meri-torious character. The declarations of Mrs. Crane, prior to the marriage, indicate with sufficient clearness its terms, and those immediately after its solemnization, are, in our judgment, equivalent to an *acknowledgment* of its execution on her part, and we are, therefore, warranted in the conclusion, that the possession of Col. Crane, was obtained under the contract and not in virtue of his rights as husband. If the bonds, &c., were in possession of Col. Crane, *jure mariti*, she need not have said anything on the subject; the law passed the title and right of possession. But in these conversations she speaks of her having given the bonds, &c., and must be considered as referring to what was done under the agreement; and it is evident she was so understood by those to whom she address-ed herself. Had she proceeded against Col. Crane, and had he acknowledged he received the securities under the contract now relied upon by the defendants, a court of equity would have decreed in favor of the wife. On the whole, we think the evidence sufficient to show such an execution of the con-tract, as to withdraw the case from the operation of the statute of frauds. The answer of Mrs. Drury to the first cross-inter-rogatory of the complainant, and the testimony of Dr. R. M. Jones, is a sufficient compliance with the requisition of the rule, which makes it incumbent on the party insisting upon the non-application of the statute, to establish his case by distinct and full evidence.

A written assignment of the bonds was not essential. An *equitable* assignment of a *chose in action* may be by parol. See on this point, 1 *Bacon's Abridgt.*, (*Bouvier's Ed.*,) 383, and the numerous cases there collected.

We say nothing of the prayer contained in the answer of the defendants, to compel the assignment by the complainants of the securities, because it was abandoned by the solicitors of the defendants. Nor do we deem it important to inquire whether the case made by the bill was one which gave the court of chancery jurisdiction. The views which we have already expressed dispense with all necessity for such an inquiry.

We reverse the decree of the chancellor and dismiss the bill; but require each party to pay his own costs in this court and the court of chancery.

By Judge Tuck:—

I concur in opinion with the court, that the ante-nuptial contract set up in the answer of the appellants is proved as stated in the bill of complaint; but I do not think that the alleged performance on the part of Mrs. Crane, and the possession of the bonds by Mr. Crane, so exclusively referable to the contract, as to take the case without the operation of the statute of frauds. But I concur in the judgment of this court because, for the reasons urged in the argument, I am of opinion the objection to the jurisdiction of the court of chancery was well taken; the bill not stating any special circumstances to show that the complainant had not an adequate remedy at law.

*Decree reversed and bill dismissed, each party to pay
his own costs in this and the court of chancery.*