# JOHN T. DAVIS *v.* W. D. McFARLANE.

GROWING CROPS AND THE STATUTE OF FRAUDS.—Contracts for the sale of growing periodical crops—*fructus industriales*—are not contracts for the sale of an interest in land within the meaning of the Statute of Frauds, and need not be in writing in order to be valid.

IDEM.—Growing periodical crops are not goods and chattels, within the meaning of the Statute of Frauds, of which a sale, in order to be valid as against the creditors of the vendor, must be accompanied by an immediate delivery and continued change of possession.

APPEAL from the District Court, Fifth Judicial District, Stanislaus County.

The defendant appealed.
The facts are stated in the opinion of the Court.

*Caleb Dorsey*, for Appellant.

*Jo· Hamilton*, and *Schell & Hewel*, for Respondent.

The points of counsel are also stated in the opinion of the Court.

By the Court, SANDERSON, J.

The action is for the conversion of three thousand bushels of wheat, and the facts, as found by the Court, are substantially as follows:

In 1868, one Bowen plowed and sowed in wheat about two hundred and forty acres of the public lands of the United States. The land was open and uninclosed, and Bowen never had any possession or right of possession, except such as was conferred by his cultivation in the manner stated. On the 16*th of March*, 1868, Bowen sold the growing crop, by *verbal* contract, to the plaintiff, at the price of two dollars and twenty-five cents per acre. By the terms of the contract the plaintiff was to pay, and did pay, twenty dollars down, and agreed to pay one hundred and eighty dollars more on the first of April then next, and the remainder when the

crop should be harvested. Bowen was not residing upon the land at the time of the sale, but was residing at a place about fifteen miles distant, and there was at the time no person in the actual and visible possession of the land or crop. After the sale Bowen never lived upon the premises, nor did he have any agent or servant there, nor did he, at any time thereafter, have any actual or visible possession of the land or crop; but he did not go to the crop and deliver possession, at the time of the sale, but said to the plaintiff: "Now you know what you have bought, and what you will have to do; you will either have to go out there, or keep a man to take care of it." As a part of the contract, the plaintiff was, from the time of the sale, to guard the crop from cattle, at his own risk, and cut and harvest it at his own expense. About ten days after the sale the plaintiff went out to the premises and examined the crop. He found no person there, and saw no indications that any person was or had been for a long time stopping there. The plaintiff remained there two nights and three days, continuously, at that time. *On the first of April*—the day upon which the remainder of the first payment of two hundred dollars was to be made, according to the terms of the contract—the amount requisite to complete the payment was tendered by the plaintiff to Bowen, who refused to accept it, saying that he had sold the crop to another person.

The cultivated fields in the vicinity or neighborhood were generally uninclosed, and, therefore, open to the incursions of cattle, and it was customary to employ some person to herd the cattle and keep them from the crops. In this the owners of the crops united, and contributed the requisite funds. The plaintiff united with other owners of crops *on the first of April*, and contributed the sum of seventeen dollars as his share for the protection of the crop in question. From that time until the first of July, the person so employed looked after and protected the crop from the incursions of cattle. The plaintiff, however, frequently visited the premises for the purpose of looking after and protecting the crop.

*On the twenty-fifth of March*, nine days after his sale to the plaintiff, Bowen sold his right to the land and to the crop to the defendant, and gave him a bill of sale. The price was eight hundred and eighteen dollars, of which fifty dollars *was paid down*. At the time of the sale the defendant was ignorant of the previous sale to the plaintiff, but learned of it before he had made any further payments upon his purchase. At the time of this second sale Bowen was not on the premises, but at the store of the defendant, about four miles distant. After the sale, one Tipton, at the request of Bowen, went with the defendant to the premises and put him in possession, there being no one there at the time. They rode around the place and returned to their homes. The defendant declined to contribute anything for the protection of the crop, but expressed a willingness to do so if he succeeded in holding the crop. After this there was a continued controversy between plaintiff and defendant until the crop had matured, when the defendant, against the will and protest of the plaintiff, entered and harvested the crop, which yielded three thousand bushels, of the value of three thousand dollars.

Two points are made by the appellant.

First—That the sale to the plaintiff was of an interest in land, within the meaning of the sixth section of the Statute of Frauds of this State, and, therefore, void, because not in writing.

Second—If the sale was of chattels, there was no immediate delivery, followed by an actual and continued change of possession, within the meaning of the fifteenth section of the statute, and the sale was, therefore, void, as against the defendant, who is a subsequent purchaser in good faith.

Neither point can be sustained.

*a.* Contracts for the sale of growing periodical crops—*fructus industriales*—are not within the Statute of Frauds, and therefore need not be made in writing. After some vacillation this has become the settled doctrine. (*Marshall* v. *Ferguson*, 23 Cal. 65.) Nor, as we consider, is the rule

affected *in this State* by the circumstance, if such be the case, that, by the terms of the contract, the purchaser is to have possession of the land for the purpose of raising the crop and harvesting it when matured.   Whatever the interest of the purchaser in the land may be under such a contract, it is certain that it does not exceed that of a lessee for a year, which latter interest is excepted from the operation of the Statute of Frauds of this State.   This subject has been considered at length by Mr. Browne in his work upon the "Statute of Frauds," p. 238, Sec. 235, *et seq.*   He reviews most of the leading cases.   From the English cases he deduces this rule:  "If the contract, when executed, is to convey to the purchaser a mere chattel, though it may be in the *interim* a part of the realty, it is not affected by the statute; but if the contract is, in the *interim,* to confer upon the purchaser 'an exclusive right *to the land* for a time, *for the purpose* of making a profit of the growing surface,' it is affected by the statute, and must be in writing, although the purchaser is, at the last, to take from the land only a chattel."  (Sec. 249.)  This was said of the fourth section of Statute 29, Car. II, Cap. 3, which does not exempt leases for a year and less from its operation.  (See 'Appendix to "Browne on the Statute of Frauds.")  In view of the fact that leases for a year and less are excepted from the operation of the Statute of Frauds of this State, we consider that a contract in this State for the sale of growing crops—the products of periodical cultivation—is not affected by the statute, although it may confer upon the purchaser an exclusive right *to the land* while the crop is ripening and being harvested.

*b.*  A growing crop, *while growing and until ready for the harvest,* is, also, unaffected by the fifteenth section of the statute in relation to the sale of goods and chattels *in the possession and under the control* of the vendor.   A growing crop, until ready for the harvest, cannot, *by itself,* become the object of a delivery, and can only be delivered into the possession of the vendee by delivering to him the possession of

the land also, of which it is a part. We do not consider that chattels thus situated fall within the rule prescribed by the statute in relation to the immediate delivery and actual and continued change of possession of goods and chattels in the possession and under the control of the vendor, at least until nature has prepared them for delivery to the reaper. To so construe the statute would make it an absolute interdiction upon the sale of growing crops, unless the vendor is willing to abandon the possession of his farm to the vendee at the same time. Growing crops, in respect to delivery, are not unlike ships and cargoes at sea, of which delivery cannot be made until they reach port. If delivery of ship and cargo be made within a reasonable time after reaching port, the sale is good as against creditors and subsequent purchasers. (*Joy* v. *Sears*, 9 Pick. 4; *Portland Bank* v. *Stacey*, 4 Mass. 661; *Buffington* v. *Curtis*, 15 Mass. 528.) Although growing crops are chattels, and, as we have seen, will pass by *verbal* sale, yet they are not susceptible of manual delivery until harvested, and therefore, until harvested they are not "in the possession or under the control of the vendor," within the meaning of the statute. (*Bours* v. *Webster*, 6 Cal. 660; *Visher* v. *Webster*, 13 Cal. 58; *Pacheco* v. *Hunsacker*, 14 Cal. 120; *Bernal* v. *Hovious*, 17 Cal. 541.) The point has been ruled the same way in Kentucky, in the case of *Robbins* v. *Oldham*, 1 Duvall, 28. There the sale was of a growing crop of tobacco, the seller to cultivate, harvest, and deliver thereafter. The Court held that a change of possession, at the time of the sale, was not required, and said: "It needs no argument to show that this qualification of the rule is necessary to the ordinary business and commerce of the country, which it is the policy of the law to encourage. And why is the present case not embraced by the qualification? Here was an absolute sale of a growing crop, not susceptible of delivery at the time. The convenience of the seller, or it may be the necessity of his situation, required such disposition of his property. So far as the record shows, the transaction was fair and free from any taint of actual fraud. Is

it the policy of the law to interdict such sales entirely by declaring them absolutely fraudulent on the mere ground that the seller retains, as he must necessarily do, the possession of the property until it shall become susceptible of actual delivery? We think not." (See, also, *Whipple* v. *Foot,* 2 Johns. 418.)

Judgment and order affirmed.