# AUBREY J. STEM

## *vs.*

# FRANCIS A. CRAWFORD, ET AL.

*Sales: grownig crops; Uniform Sales Act; delivery, when con-*
*structive, is sufficient; bill of sale, when requisite.*
*Contracts: Statute of Frauds; when defend-*
*able, although not enforcible.*

Growing crops, if *fructus industriales,* were regarded as chat-
tels, and could be sold without complying with the 4th section
of the Statute of Frauds, and a sale of a crop not yet threshed,
etc., was not within the 17th section of the statute, because
work and labor were necessary before it could be delivered; it
was not a sale of goods or merchandise within that section.
                                                        p. 581

The sale of growing crops is now covered by the Uniform
Sales Act (Sections 22 to 99 of Article 83).            p. 582

In a suit for the price of growing crops under the provisions
of the Uniform Sales Act, the court should instruct the jury as
to what is necessary, under the statute, to make the sale valid.
                                                        p. 584

Constructive delivery is a mixed question of law and fact,
and the court should instruct the jury as to the legal effect of
any particular circumstances from which a delivery may be
deduced.                                                p. 585

Constructive possession is that which exists in contemplation
of law, without actual enjoyment or occupation.         p. 589

Where a tenant during his term sells a growing crop to his
landlord, such a constructive delivery is not a compliance with
Section 25 of Article 83 of the Code, so as to be binding against
a *bona fide* subsequent purchaser for value without notice, and

in such a case a bill of sale is necessary in order to protect the landlord. 、 p. 591

Once a contract is executed a party may defend it, or acts done under it, although while executory it could not be enforced because of the Statute of Frauds. p. 592

*Decided January 16th, 1919.*

Appeal from the Circuit Court for Carroll County. (Forsythe, Jr., J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Guy W. Steele,* for the appellant.

*Francis Neal Parke* (with a brief by *Bond & Parke*), for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the defendants (appellees) in an action of trover brought by the plaintiff (appellant) to recover the value of an undivided interest in a crop of growing wheat on fifty-one acres of land in Carroll County. There was a demurrer to each of the three counts of the declaration, which the Court overruled as to the first and second and sustained as to the third. As the appellant under the first and second counts obtained the benefit of everything he could have asked under the third, the ruling as to the latter is immaterial and need not be discussed. There are three exceptions to the rulings on the admissibility of evidence, and one on the action of the Court on the prayers.

C. Welby Streaker rented a farm from the defendant Crawford from the 1st of April, 1916, until March 31st, 1917. He was to furnish half of the seed and fertilizer and get half of the crop, but upon the expiration of his tenancy he was not to cut the growing crop then on the farm which was to be cut by the landlord, or the succeeding tenant, hauled to market and sold, and out of the proceeds of sale Streaker was to receive one-fourth, or he could have taken one-fourth of the wheat. There was a crop of wheat on the farm when he took possession, which he cut and delivered to the railroad for what is spoken of as "the fourth bushel." He sewed fifty-one acres and left at the end of the year, in March, 1917. John C. Miller, one of the defendants, succeeded him as tenant, his tenancy beginning April 1, 1917. He cut the wheat which Streaker sowed, had it threshed, hauled to market, sold it, collected the money and turned over three-fourths of the proceeds to Crawford and kept one-fourth. The controversy in this case has arisen by reason of the claim of Crawford that in January, 1917, Streaker sold to him all of his interest in the growing crop of wheat which he had sowed on the fifty-one acres, and Stem (the appellant) contends that Streaker sold it to him on March 1, 1917, for which he paid him $200 and took his receipt.

In this State growing crops, if *fructus industriales,* such as one of wheat, were regarded as chattels and hence could be sold without complying with the fourth section of the Statute of Frauds, and a sale of a crop not yet threshed, shucked or gathered was not within the seventeenth section of that statute, because as work and labor were necessary to prepare it for delivery, it was not a sale of goods, wares and merchandise within the meaning of that section. *Willard* v. *Higdon,* 123 Md. 447, 451, where many cases are cited. That rule has been somewhat changed by the Uniform Sales Act, which was adopted in this State in 1910, and now embraces Sections 22 to 99, inclusive, of Article 83 of the

Code. By section 97 it is provided that " 'Goods,' include all chattels personal other than things in action or money. The term includes implements, industrial growing crops and things attached to or forming a part of the land which are agreed to be severed before sale or under the contract of sale." Section 24 provides that "Subject to the provisions of this sub-title and of any statute in that behalf, a contract to sell or a sale may be made in writing (either with or without seal), or by word of mouth, or partly in writing and partly by words of mouth, or may be inferred from the conduct of the parties." Section 25 is as follows:

"A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upward shall not be enforceable by action, unless the buyer shall accept part of the goods or choses in action so contracted to be sold, or sold and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

"(2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time, or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply."

Streaker and Stem testified that the latter paid the former $200 for the wheat on or about March 1, 1917, and the receipt for the same is set out in the record. That transaction was undoubtedly a compliance with the statute. At the conclusion of the testimony in chief of Crawford, which had been admitted subject to exception, the plaintiff made a

motion to strike out his evidence as to the purchase of the wheat because,

"1.   It does not meet the requirements of the Uniform Sales Act.

"2.   Because the undisputed evidence shows that the vendor remained in possession of it, and no bill of sale was given and recorded.

"3.   And for other apparent reasons."

The Court overruled the motion, and that ruling constitutes the first exception.   Crawford was the first witness called by the defendants, and conceding that that evidence alone would be insufficient to support his contention that he had purchased the wheat, the Court could not assume that there would not be other evidence.   His testimony tended to show a compliance with paragraph 3 of section 25 of Article 83, which provides that: "There is an acceptance of goods within the meaning of this section when the buyer. either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods."   As it was necessary to prove an acceptance as well as a receipt, his testimony, reflecting upon that, was relevant and admissible, and hence the Court could not have stricken that part of it out under that motion, which was general and did not refer to any particular part of his evidence.   The second exception was taken to the refusal of the Court to permit the plaintiff to offer in evidence a check which Crawford had given Stem for an account Stem had against him.   It had nothing to do with this controversy, but the plaintiff claimed that by reason of an endorsement written on it by Crawford it was admissible to show on cross-examination "the bias, hostility and mental character of the witness Crawford."   He had already testified that he and Stem were not friends, and he doubted whether they ever would be, and as the evidence offered was not in any way connected with this controversy the Court was right in excluding it, however improper the endorsement may be con-

ceded to have been. The third exception was to the refusal to strike out certain evidence of John C. Miller. He testified that on January 12, 1917, he heard Streaker and Crawford talk about the farm, and Crawford told Streaker that Miller was there to rent in case he gave it up. He said that Streaker stated "that I could have the farm as far as he was concerned, and he had nothing to do with the wheat crop, that was between Mr. Crawford and I and the plowing could go with it." Streaker had already testified to the conversation, and denied that he had told Miller that he had sold the wheat to Crawford. For that and other reasons which might be given we can see no valid objection to the evidence of Miller.

The first prayer of the plaintiff proceeded on the theory that he had purchased the wheat crop from Streaker on March 1st, 1917, but made no reference to the alleged purchase of it by Crawford in January. The Court modified it by inserting in it, "provided the jury do not find that the said Streaker had previously sold the said interest in the said wheat crop to the said Crawford," and granted the prayer as modified. If the sale to Crawford was a sufficient compliance with the statute and was made prior to March 1st, it was of course proper to modify the prayer offered by the plaintiff, but the Court ought to have gone further and have instructed the jury as to what was necessary under the statute to make it a valid sale. The jury could not be presumed to know that, and if it was satisfied that Streaker had agreed to sell the wheat to Crawford before the 1st day of March, it might not have felt bound by such matters as whether there was an acceptance, receipt or delivery, but it had nothing in that prayer to guide it. The defendants' first prayer did present their theory, but neither prayer referred to the other and the modification of the plaintiff's might have been misleading, without some explanation as to what was sufficient to make a valid sale—leaving of course the facts to the jury. Constructive delivery is a mixed ques-

tion of law and fact, and the Court can instruct the jury as to the legal effect of any particular circumstance which may be offered to the jury and from which the delivery is to be deduced. *Atwell* v. *Miller,* 6 Md. 11, 19.

But after all, the case turns on the question whether the alleged sale by Streaker to Crawford was a valid one under the statute, if the jury believed the evidence of the defendants as to what occurred. We are not now speaking of the necessity *vel non* of a bill of sale. It is said in the brief of the appellees that "In this case no earnest was given by the buyer of the growing crop, or did the buyer give something in part payment." As we have already indicated, we think there was sufficient evidence of an acceptance within the meaning of paragraph (3) of section 25 to authorize the submission of that to the jury, but the record in this case strikingly shows the danger of such a rule, if the theory of the defendants is held to be correct in reference to the effect of the alleged sale to Crawford. The uncontradicted evidence is that the plaintiff purchased Streaker's interest in the wheat crop, paid him for it and took his receipt while Streaker was still in actual possession of the farm—it being about a month before the end of his tenancy. The farm was in sight of plaintiff's place of business and he had no reason to suspect that Streaker had sold the wheat to Crawford, or anyone else. Streaker told him that Crawford had refused to give him his price and as he was going away he wanted to sell it. He testified at the trial to the same thing, and positively denied that he had sold it to Crawford. Crawford has never yet, as far as the record discloses, paid a cent on the purchase money and has not given him a release for the clover seed, which he said Streaker was to have furnished and which he claims was a part of the consideration for the wheat. He said Streaker was to come the day after the sale of his personal effect (which was on March 12th), but he did not come. He testified: "I never paid a cent in cash money on wheat outside of the clover seed, I con-

sider that as part payment, I never went to Mr. Streaker
to give him any money, it was his place to come to me.  I
owe him for the wheat and he owes me." At that sale Craw-
ford was the auctioneer and Streaker paid him for his serv-
ices—although there was testimony that Streaker said he
wanted that settled separately from the claim between them
as landlord and tenant.

It was recently said in *Castle* v. *Swift & Co.*, 132 Md. 631,
104 At. 187, by JUDGE PATTISON, speaking for the Court,
that: "It is clear that the terms of the statute require two
distinct acts on the part of the vendee; he must accept, and
he must actually receive, a part of the goods, in order to
render the contract binding on him.  There may be an actual
receipt without any acceptance, and there may be an accept-
ance without any receipt.  An acceptance may precede or
follow the receipt, or it may be contemporaneous therewith;
and at times even a receipt may be evidence of acceptance,
but it is not the same thing.  *Hewes & Co.* v. *Jordan,* 39
Md. 472, 17 Am. Rep. 578."

Again it was there said: "All cases admit that the term
'actually receive' found in the statute, means the acquisition
of possession by the buyer, and whatever difficulties exist in
regard to its meaning are largely due to the inherent diffi-
culty of determining what is, in fact, possession.  This Court,
however, has said, speaking through JUDGE ALVEY, that:
'The receipt of part of the goods is the taking possession of
them.  When the seller gives to the buyer the actual control
of the goods, and the buyer accepts such control, he has
actually received them.' *Hewes & Co.* v. *Jordan, supra.*
It is said, however, upon good authority, that goods may be
received by the buyer within the meaning of the statute, and
yet allowed to remain in the hands of the vendor, if it be
shown that the seller has ceased to hold in the character
of unpaid vendor and holds wholly as bailee for the buyer.
*Williston on Sales,* sec. 91, and the numerous cases cited in
note thereto."

We do not doubt that the delivery required by the statute may be constructive in reference to a growing crop of wheat as between the vendor and the vendee, but whether it is sufficient as against a subsequent purchaser, acting in good faith and without notice of a prior sale, who has paid value for it, presents a different question—especially under such circumstances as are shown by this record. Nothing was done by either Streaker or Crawford to suggest any change of possession before the sale was made to Stem. Streaker was then in as full actual possession of the farm as he had been since he moved there. The last paragraph which we have just quoted from *Castle* v. *Swift & Co.,* reflects much upon the question now being considered. In *Brown on Statute of Frauds* (4th Ed.), secs. 315-340, acceptance and receipt are fully considered. In section 318A it is said: "There remains to be considered the third form of delivery and receipt, often spoken of as 'constructive,' where, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding; that the seller, or his bailee, now holds as the bailee of the buyer, or that the buyer himself, who formerly had goods of the seller, in his own possession as bailee, is now permitted by the latter to deal with them as owner. Whether such a change has taken place is a question for the jury on the evidence."

As by the terms of the statute there must be an acceptance of part of the goods and the buyer "must actually receive the same," if the seller is in fact still in possession of them, but his possession is treated as the buyer's possession, when there is a constructive delivery, he must to give it force be treated as the bailee or agent of the buyer. It is said in 20 *Cyc.* 250: "Although the goods remain in the possession of the seller, yet there may be a receipt by the buyer if the seller ceases to hold as owner and agrees to hold as the bailee of the buyer, with his consent, but to constitute a receipt in

such a case the seller must have lost his lien for the price, and if a sale was not accomplished by manual delivery or actual change of custody, there is, authority for requiring proof of some act indicating a change in the seller's holding, proof of mere words being insufficient to show a receipt."

Section 46 of Article 83 of the Code is as follows:

"Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same."

Section 39 of Article 14 in reference to negotiable bills of lading and section 48 of Article 14A in reference to negotiable warehouse receipts have similar provisions. The same principle applies in cases of conditional sales. In *Praeger* v. *Implement Co.,* 122 Md. 303, JUDGE THOMAS, in speaking for the Court, said that "Prior to the enactment of section 41 of Article 83 of the Code of 1912, it had been uniformly held in this State that contracts of sale wherein the vendor reserved title to the property until the contract price was paid were valid between the vendor and vendee and as to all persons claiming under the latter with notice of the contracts, but that they were not binding as to *bona fide* purchasers, who acquired the property without notice of the vendor's claim."

The Court did not deem it necessary to determine how far the rule stated may be modified by the provisions of section 41 of Article 83, as no proper construction of that Act could aid the appellant and there is nothing in that section which could aid the present appellees in any way.

We also held in *Praeger* v. *Implement Co., supra,* and in *Dinsmore* v. *Maag-Wahmann Co.,* 122 Md. 177, that Sec. 43 of Article 21, relating to the execution and recording of bills of sales and mortgages of personal property did not apply to conditional sales, as the vendors do not remain in possession, but in a case like this we are of the opinion that it does apply when *bona fide* purchasers for value are concerned. A mere constructive delivery such as is claimed here is no notice to the public that there has been a change of ownership and the very object in requiring bills of sale to be executed and recorded, as provided in section 43 of Article 21 would be defeated, if it is not applicable to such a case as this. The section concludes by saying, "but nothing herein contained shall be construed to extend to any sale or gift, where the same is accompanied by delivery, nor to invalidate such transfer as between the parties thereto." In cases between the parties the statute therefore makes an exception, but when it says "is accompanied by delivery," it does not mean a *constructive* but an *actual* delivery, in so far as *bona fide* purchasers are concerned. " 'Constructive possession' is that which exists in contemplation of law without actual enjoyment or occupation." 1 *Words and Phrases,* 936, and cases there cited. We are, therefore, of the opinion that as against *bona fide* subsequent purchasers without notice, such a constructive delivery as is claimed here is not a compliance with section 25 of Article 83—which provides that the buyer shall accept "and actually receive" the goods, and also that even if it be admitted that Crawford was put in constructive possession of the wheat the actual possession which Streaker in fact had was such as to require a bill of sale to be executed and recorded, in order to protect Crawford from Stem, who is shown to be a *bona fide* subsequent purchaser for value, without notice of any question about the right of Streaker to the wheat when he purchased and paid for it.

The appellees referred to *Davis* v. *McFarlane,* 37 Cal. 634; *Cummings* v. *Griggs,* 2 Duvall (Ky.), 87; *Ross* v. *Welch,* 11 Gray, 235, and *Thorndike* v. *Bath,* 114 Mass. 116, in support of the contrary view, but the circumstances of those cases were very different from those in this, and no such statutes as section 46 of Article 83, and section 43 of Article 21 of our Code were cited or apparently in force in those states at the times of the decisions. In *Davis* v. *McFarlane* the wheat was sewed on the public land of the United States by one Bowen, the seller, who never had any possession or right of possession of the land excepting such as was conferred by his cultivation. No such question as whether a bill of sale would have protected the first purchaser was raised, but if the statute is similar to ours the difficulty would have been that the seller did not remain in possession. In *Cummings* v. *Griggs,* the contest was between a purchaser and a creditor of the seller. So in the case of *Robbins* v. *Oldham,* 1 Duvall, 28, which is the one relied on in *Davis* v. *McFarlane.* Indeed in the latter case the syllabus refers to creditors, and not to purchasers, although there was a second purchaser in that case. In *Ross* v. *Welch* the only question was whether the case was within the Statute of Frauds, and in *Thorndike* v. *Bath,* the seller was held to be the bailee of the purchaser. In the latter case the seller was a manufacturer of pianos and the purchaser left those he bought with him to be finished. It will also be observed that in decisions cited in these cases reference was made to the fact that *the sales were otherwise complete.* There is nothing in those cases or any others we have found which could cause us to reach a different conclusion from that announced above as to constructive possession or constructive delivery when the rights of *bona fide* subsequent purchasers without notice are involved.

It was also suggested by the appellees that as Stem did not have a bill of sale he was not in a position to object to Crawford not having one, but that suggestion overlooks the fact

that there is no subsequent purchaser claiming against him, and as between Streaker and him the statute itself protected him as shown above.

It was also contended on the part of the appellees that there was a part payment which was sufficient under the statute. Inasmuch as we have reached the conclusion we have announced in reference to the necessity for a bill of sale, it is not necessary to consider at much length this branch of the case. The appellees claim that Crawford purchased the wheat for $187.50, and a release of a claim for clover seed, the one-half of which Streaker was to furnish, but did not do so. Streaker flatly denied that there was any such agreement. He admitted that by the terms of renting, he was to "pay for one-half of the clover seed sown in the spring after I took possession of the farm; but when I got there he said that he had seed, he would sow it all; he sowed it all, when I left I did not catch on to that,—I got stung one-half of the crop." We do not find that contradicted anywhere in the record, and if, as we understand that testimony, Streaker did not get half of the clover crop, the clover seed matter certainly could not be used as part payment for the wheat. The appellees say in their brief:

> "While an antecedent debt can not be regarded as part payment, yet we submit the release of an obligation to be performed in accordance with the terms of the renting, and which is valued and taken at a fixed amount, may be properly considered as part payment. Streaker did not buy the clover seed for the Spring sowing of 1917 because of this release, but Crawford must."

A sufficient answer to that is that there is no evidence of the latter statement. Crawford did not claim that Streaker owed him for clover seed for the spring sowing of 1917— on the contrary he claimed it was for 1916. He was asked on cross-examination whether he had paid anything for the wheat and replied: "Yes, sir; the clover seed that he owed

me for a year, $14 and some cents." There was a special exception to the defendant's first prayer on the ground that there was no evidence that Crawford was to release him from furnishing one-half of the clover seed for the spring sowing of 1917. It would be a peculiar custom if a tenant was to pay the half, or other proportion of seed for the spring he went into possession and then again required to pay for the seed for the year succeeding his possession. There is no evidence of such custom and none which can properly be construed to mean such a contract between these parties. If, therefore, we accept the appellees' statement of the law, the facts do not sustain them, but without deeming it necessary to go as far as the appellees' brief does—that an antecedent debt can not be regarded as part payment—nothing seems to have been done. There was no receipt given, no entry of any kind and no discharge, 20 *Cyc.* 252; 29 *Am. & Eng. Ency. of Law,* 971, and there was no legally sufficient evidence.

It was also said that Crawford afterwards took possession of the farm and hence he had actual possession, but as we have already shown he did not have possession when Streaker sold the wheat and was paid for it.

Nor do we deem that it is necessary to discuss at length the question whether the defendants can rely on the alleged purchase, even if the statute was not complied with. We said in *Willard* v. *Higdon,* 123 Md. 447, 452, that "Under our decisions a party may defend, although the contract can not be enforced on account of the Statute of Frauds." But it will be observed that the contract relied on in that case was *executed* and not merely executory, and that was true in the cases there cited. In *Crane* v. *Gough,* 4 Md. 316, the leading case in this State on the subject, CHIEF JUDGE LEGRAND said that the 4th section of the Statute of Frauds (the one then under consideration) did not render all contracts void, if not in writing, but merely inhibited an action on them, and that "If they be *fulfilled* and *executed* they are

just as valid as though they had been in writing," etc. He quoted from *Philbrook* v. *Belknap*, 6 Vt. 386, that "The statute provides that no action shall be sustained upon certain contracts, unless they are evidenced by writing. It operates therefore upon the contract, *only while it is executory.*" So in *Webster* v. *LeCompte*, 74 Md. 249, CHIEF JUDGE ALVEY said, that the contract was performed on both sides and that the defendant was not seeking to enforce the agreement as an executory contract. He quoted at length from *Crane* v. *Gough* to show that the statute only operated upon the contract while it was executory, and hence a party may always defend under such a contract, when sued for any act done under it. So, as we have seen, section 25 of Article 83 says that a contract to sell or a sale "shall not be enforceable by action, unless," etc. When, therefore, the contract is *executed* a defendant can rely on it, although suit could not be brought on it while it was executory. It can not be properly said in this case that the contract was executed. That wheat has never been paid for, and it is only by reason of the fact that the defendant Miller had possession as Crawford's tenant that he cut and disposed of the wheat. Crawford refused to let Stem cut it or have it cut, and Miller refused to account to him. That occurred about six months after Crawford claimed he purchased the wheat, and in the meantime Stem had bought and paid for it.

It follows that there was error in the modification as made in the plaintiff's first prayer and granting the defendant's first prayer, and the judgment will be reversed.

*Judgment reversed, and new trial awarded, the appellee to pay the costs.*