Brinkerhoee, C. J.
Elizabeth Einch filed her petition for dower,, in the usual form under the statute, in the common pleas of Madison county, alleging the death of her late husband, Ira Finch; that he died seized of certain .real estate therein described; that he had left a will which had been duly admitted to probate, but which made no provision for her, in lieu of dower or otherwise, and by which all his real estate had been devised to the defendants, his two sons.
*To the petition the defendants answer as follows;
“ The above named defendants now come and answer the petition in this case, and state to said court as follows :
“ I. They deny that the petitioner, Elizabeth Finch, is entitled to dower in the premises described in her said petition, or in any part thereof.
“II. The said petitioner was a widow at the time of her intermarriage with Ira Finch, now deceased, and who made the will1 *407 named in the petition. The said parties were married on or about the 11th day of September, 1841; the said Ira Finch was about 59 years of age at that time, and the petitioner was then about fifty years of age. The said Ira Finch had made and published his said will at-that time. Previously to the said marriage, but when the parties contemplated the samo, they, the said petitioner and said Ira Finch, desired their property to be kept separately, for their own use and for the use of their children respectively; the said Ira Finch desired that this contemplated marriage with the petitioner, should in no manner interfere with or .change his said will, which he had then made, and the petitioner desired that the said marriage should not deprive her of keeping her property separately, for the benefit of herself and her children. And thereupon the said petitioner and the said Ira Finch entered into a parol agreement with each other, in contemplation of, and previously to, said marriage, that the said Elizabeth should retain, sell or convey to whomsoever she chose, at any time during the. contemplated marriage, all or any part of her personal property, and her estate of dower in the lands of her former husband, and appropriate the proceeds thereof, and the annual income of her said estate of dower-, at her own discretion; and that the said Ira should not at any time during said contemplated marriage, or in case he survived her, at any time after her decease, have any interest whatever in said property, but that the same should in such case descend to her children by her former husband.
“ And it was thereby further agreed between said Elizabeth and Ira, that the said Elizabeth, in case she survived the said Ira, should release and relinquish all right, title, and claim to the estate of said Ira, real or personal, to his legatees and devisees, executors, etc.; and the said Elizabeth thereby agreed with said Ira, that she would never claim, and that in no event should she be entitled to. claim or demand, any right, title, or interest in or to his estate real or personal.
“ The said agreement was made a short-- time previously to said marriage.
“ The said agreement was entered into and executed by said Elizabeth and Ira, in good faith, during his lifetime. The said Elizabeth, after said marriage, and until the decease of said Ira, retained her own personal property, and gave the same from time to time to her children by her former husband; and she received during the *408 same time the rents which arose from her dower estate in the lands of her former husband, William Taylor, deceased, and gave the same to her said children.
“At the time the above agreement was made, the said Elizabeth was fully advised by said Ira, of the provisions and contents of his said will.
“After the decease of said Ira, the said Elizabeth was willing to abide by, in good faith, the said agreement, but she was afterward dissuaded from so doing by Jacob Taylor.
“ Wherefore the petitioner is barred of her said claim for dower.
“III. And as a further answer, the defendants aver, that since the decease of said Ira Finch, the said Elizabeth agreed with the defendants to abide by said agreement entered into with said Tra as aforesaid, provided they would support her during her natural life, at the residence of her son-in-law, the said Samuel T. Finch, which they agreed to do ; and the said Elizabeth has resided with, and been supported by, the defendant Samuel.
*“ After the last-stated agreement had been partly executed by the parties, the said Taylor interfered, and succeeded in inducing the petitioner to ask the defendants to rescind it.
“And afterward another agreement was entered into, by parol, between the petitioner and the defendants, in substance, as follows: The said defendants thereby promised to furnish said Elizabeth one cow, furnish her with firewood, during her natural life, and pay to her annually during her life, twenty dollars toward her maintenance and support, in consideration that she would abide by said agreement with said Ira, and not set up any title or claim to dower in the said real estate, or set up any claim whatever to said Ira’s personal estate; and the said Elizabeth agreed to receive the money and property which said defendants thereby promised to furnish her, and she also thereby agreed that she would not, in consideration thereof, set up, but would relinquish any claim to said .dower and to the personal estate of said decedent, and abide by said agreement which she had made with said Ira.
“The defendants furnished said Elizabeth with said cow in pursuance of said agreement between them and her; which cow she received; and they have been ready and able, and have offered to perform said agreement. And the defendants are still ready and willing, and hereby offer to perform the last-named agreement on their part, upon the performance of the same by the petitioner on her part.
*409 “ Wherefore they ask that the court may order and direct that ■the petitioner shall relinguish and release all title, claim, and right to the estate of said Ira Finch, deceased, real and personal; and that the petitioner and the defendants may be ordered to specifically perform the said agreement entered into between them; and they ask for other proper relief.”
A decree having passed in favor of the petitioner, the case was .appealed to the district court; and, at the April term, 1858, by the ■consent of all parties and the leave of *the court, all pleadings subsequent to the answer were withdrawn, and the petitioner filed a motion to strike the answer from the files, on the ground that the agreements set forth therein are within the statute of frauds, .and constitute no defense to the petition. On this motion the case was reserved for decision here.
The practice thus adopted was irregular and ought not to be drawn into precedent. The motion being based, not on any alleged irregularity connected with the filing of the answer, nor on any matter pertaining to its form merely, but on its alleged insufficiency in matter of substance, the objection ought to have been taken by ■demurrer; but, as the course adopted was taken by the consent of nil parties, and by leave of the court, obviously for the purpose of bringing the case directly before this court for decision, we will proceed to dispose of the questions made, upon their merits.
The first defense set up in the answer, amounts to a kind of general issue—a form of pleading wholly inadmissible under the code, or in chancery, and will not be further considered.
The antenuptial agreement set forth in the second defense alleged in the answer, was clearly an agreement “upon consideration of marriage.” It is true, marriage was not the sole consideration for the agreement, on the part of the intended wife, that she would not demand dower in case she survived her intended husband; his agreement not to exercise the rights, in respect to her property, which the marriage would confer, constituted an additional consideration for the agreement on her part; but the agreement was entire; the intended marriage entered into, and formed a part of the entire consideration on both sides; and without it, the agreement would never have been made.
It is argued, however, that the agreement was partly performed, and so taken out of the statute, because the ^marriage took place in pursuance of the agreement, and during the continúanos *410 of the marriage the husband permitted the wife to dispose of and) deal with what was her property before marriage as if she had been sole.
It has long been settled that, in the absence of actual fraud, the-fact of marriage is not such a performance as will take an agreement, made “upon consideration of marriage” out of the statute. Otherwise the statute would be rendered wholly nugatory; for, so-far as the fact of marriage is concerned, such agreements are-always performed before they become the subjects of judicial consideration ; and so no case would ever be within the statute. Reeve’s Dom. Rel. 215; Redding v. Wilkes, 3 Brown’s Ch.,400; Montacute v. Maxwell, 1 P. Wms. 618; Dundas v. Dutens, 1 Ves. Jr. 196; Surcome v. Pinniger, 17 E. L. & Eq. 212; Hammersley v. Baron de Biel, 12 Cl. & Fin. 45. And we are of opinion that the fact of the petitioner being permitted, after marriage, to give away •personal property which before the marriage was hers, as well as-the proceeds of'her dower estate in the lands of her former husband, is not such a part performance as will take the agreement out of the statute. Prior and up to the moment of marriage, the agreement, by force of the statute, was legally binding on neither party; and the moment after marriage, the husband became in law the owner of her personal, and of the proceeds of her real estate. Whether these were much or little, we are not informed, nor do we-see how the amount of them could affect the principle involved in the case. But on the marriage, her legal existence became merged in his; she could give away nothing without his consent, and he-could retain or dispose of, at his pleasure, all that which had been hers without her consent; and any gifts, therefore, which he permitted her to make, were his' gifts. U nder the circumstances, the parties could occupy, in respect to the subject of the agreement, no antagonistic relations ; on him there were no legal obligations; and whatever he ^permitted her to do was a matter of mere grace and favor. Had he seen proper to make these gifts to her children without her consent and against her remonstrances, would they have constituted a part performance? This, we suppose, would not be claimed; and yet, in legal effect, they would have been the same as they were when made by her with his consent. In either case they were his gifts.
It is argued in behalf of the defendants, that inasmuch as the statute of frauds does not make contracts within it void, but only *411 provides that “no action shall be brought whereby to charge the-defendant, upon any agreement upon consideration of marriage,” such agreement may be available as a defense, though it could not-be as the foundation of an action upon it. Such a distinction, however, so far as we know, has never been recognized; but, on the contrary, it has been held that a statute, in language identical with ours, renders agreements within it equally available whether in the defense or the prosecution of an action. Browne on Stat. of Frauds, sec. 131; Comes v. Lamson, 16 Conn. 246.
Again, it is contended for the defendants that this is a proceeding in the nature of a bill in equity; that, under the circumstances disclosed in the pleadings, it is inequitable that the petitioner' should receive dower, and that, therefore, the maxim that a party who asks equity must do equity, applies to the case and precludes’ a recovery by the petitioner. This, we think, is asking too general and indiscriminate an application of the maxim; for it seems to be well settled that the maxim can not apply, unless the mutual equities, which the maxim supposes, arise out of the subject-matter of the suit, and such as have a foundation in established rules of law or equity, and are capable of enforcement. As where a party asks an account on equitable principles, he must submit to a counter-account on similar principles ; or where he asks a specific performance of a contract, he must perform the conditions *of that contract on his own part. The maxim invests courts of equity with no arbitrary discretion. Here the petitioner proceeds for the enforcement of a statutory right; and the only claim of the defendants is under a contract, which, by force of the statute of frauds, had no legal obligation, and the performance of which, by reason of her want of legal individuality during coverture, she was incapable of either accepting or refusing. Gibson v. Goldsmid, 27 E. L. & Eq. 588; Hanson v. Keating, 30 E. Ch. (4 Hare) 1; Colvin v. Hartwell, 5 Cl. & Fin. 522.
The case of Crane v. Gough, 4 Maryland, 316, is cited in support of this defense. That was the case of an antenuptial agreement to the effect that the husband should have certain notes and bonds belonging to the wife, and he should allow her the interest accruing on them during coverture as pin-money. The notes and bonds were accordingly handed over to the husband, and he did allow her the interest accruing on them as pin-money during her life. The husband having never collected the notes and bonds, though re- *412 -taming them in his possession, the administrator of the wife brought his bill in chancery to compel the husband to deliver up to him the notes and bonds. A majority of the court held that the bill should be dismissed, on the ground that the antenuptial contract had been ■completely performed—on both sides wholly executed—and was, therefore, unaffected by the statute. The doctrine on which this case was decided is familiar and undisputed, though the propriety of ts application to the facts of the case was disputed by one of the members of the court, and is, perhaps, doubtful. But be that as it may, the case is inapplicable to the one before us, for here there is no claim that the contract was wholly carried into execution.
The dower of the petitioner in the lands of which her husband died seized, was an estate; inchoate during the coverture, and complete on the death of the husband, though peculiar in some of its incidents. Miller’s Adm’r *v. Woodman, 14 Ohio, 518. Before being actually assigned to her, it is an “ interest in,” and “ concerning lands and tenementsand the agreements alleged in the remaining defenses set up in the answer are clearly within the statute of frauds, and no act or acts of part performance are averred, which, on established principles, can take them out of the statute.
The cause is remanded to the district court, with leave to petitioner to withdraw the motion to strike the answer from the files, .and to substitute a demurrer to the answer.
Scott, Sutliee, Peck, and Gholson, J.J., concurred.