BARRETT, (BROWN v.) See Case No. 1,991.

---

## Case No. 1,046.

### BARRETT v. GODDARD.

[3 Mason, 107.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1822.

SALE—DELIVERY—VENDOR'S LIEN.

Where goods were sold, lying in the vendor's warehouse, on a credit of six months, for which

[1] [Reported by William P. Mason, Esq.]

a note was given, and the goods were sold by marks and numbers, and it was a part of the consideration of the purchase, that they might lie, rent free, in the warehouse, at the option of the vendee, and for his benefit, until the vendor should want the room; held, that there was a complete delivery of the goods, so that, on the insolvency of the vendee, they would not be stopped by the vendor.

[Cited in Gibson v. Stevens, Case No. 5,401. Overruled in Parker v. Byrnes, Id. 10,728.]

At law. This was an action of trover, [by Charles Barrett against Nathaniel Goddard,] to recover fifty-one bales of cotton, alleged to have been converted by the defendant on 27 May, 1822. The cotton was part of an importation of eighty-two bales, numbered from 1 to 82, which the defendant had imported from New Orleans, in February, 1822. In the early part of March, the defendant employed a broker (Mr. Peter Coffin) to sell the cotton for him. The broker accordingly sold one half, viz. forty-one bales, consisting of the bales marked with even numbers, to a Mr. Perrin, at the cost and charges, on a credit of six months, with interest from 7th February preceding, that being the time of the purchase at New Orleans. The remaining forty-one bales, consisting of the bales with odd numbers, the broker sold on the 15th March, 1822, to one Silas Bullard, at the cost and charges, on a like credit of six months. At the time of the sale, the whole eighty-two bales were lying in the defendant's warehouse, near his dwellinghouse in Boston, being piled together without any regard to the numbers. During the negotiation for the sale, and as an inducement to the purchase, the broker stated to Mr. Bullard, that the cotton might lie in the warehouse of the defendant, free of storage, as long as Bullard might wish, unless the defendant should want the room for the storage of other goods, which event was not likely to happen until the ensuing summer. Upon the faith of this representation, and the understanding, that Bullard meant to avail himself of this privilege, the bargain was completed. Mr. Bullard gave his note for the amount of the cotton, dated 7th February, 1822, payable to defendant or order in six months, with interest, which was accepted by the broker, who thereupon gave him a bill of parcels, dated 15th March, 1822, which stated the numbers of the bales sold to Bullard, and acknowledged a receipt of payment by the note. The note was afterwards received without objection by the defendant. At the time of the sale, Bullard did not go to the warehouse of the defendant to examine the cotton, but he bought upon the examination of a few bales, which he saw on the wharf, while it was landing, and of samples of the other bales. The cotton remained in the same warehouse of the defendant, promiscuously piled up, until the month of June, when Mr. Perrin began to take away, as he wanted them, the bales purchased by him.

They were, of course, then separated from the general mass of the bales.

On 25th May, 1822, Bullard became insolvent, and stopped payment; and on that day an indenture of three parts was prepared between Bullard of the first part, the plaintiff, who was a creditor of Bullard, of the second part, and Benjamin Rich and others, creditors of Bullard, of the third part; but it was not executed by the plaintiff till the morning of the 27th of May. The indenture conveys to the plaintiff, for the benefit of himself and other creditors, among other things, the forty-one bales of cotton, purchased by him of the defendant, by the description of "41 Bales N. O. Cotton at N. Goddard's store, Summer street." The failure of Bullard was not generally known until the morning of Monday, the 27th of May. On the same morning, after the execution of the indenture, the defendant went with the note aforesaid, to Bullard's countinghouse, and informed him, that in consequence of his failure, he, the defendant, would not deliver the cotton unless the note was paid or secured; and he offered to rescind the sale, and deliver up the note; and he then tendered the note to Bullard, who declined receiving it, or doing any thing. Immediately after this interview, and in the same countingroom, the plaintiff saw the defendant, gave him notice of the assignment, and demanded the cotton from the defendant. The defendant made the same offer to the plaintiff, that he had made to Bullard, but the plaintiff declined it; and the defendant then refused to deliver the cotton, as the note was unpaid, and said he should not give it up without a lawsuit. The note aforesaid became due since this action was commenced, and has not been paid. Bullard has continued insolvent ever since 27th May.

In August, 1822, the broker sold the forty-one bales of cotton in controversy, by the order and on account of the defendant, without any authority from the plaintiff. The cotton, up to the time of the sale, remained in the defendant's warehouse. The value of the cotton on the 27th of May, the day it was demanded by the plaintiff, was $3,011.60. No other delivery of the cotton took place, than what is to be inferred by law from the preceding facts. At the time of the purchase, Bullard was understood to be at full liberty to take away the cotton when he pleased; and there was no proposition made that the defendant should retain it as security for the note. Upon this evidence a verdict was, by consent, taken for the plaintiff, for the sum of $———, subject to the opinion of the court, upon the question, whether upon this evidence the defendant had a right to retain the cotton, or stop the delivery thereof, until the note of Bullard was paid or secured to be paid; either party to be at liberty to turn the case into a special verdict within ——— days after the judgment was rendered by the court.

Mr. Bliss, for plaintiff.
Mr. Shaw, for defendant.

STORY, Circuit Justice. The right of the defendant to retain the cotton in this case, so as to defeat the action of the plaintiff, has been placed at the argument upon two grounds. 1. That there was no actual or constructive delivery of the cotton to Bullard, and the defendant retains a lien for the price. 2. That the defendant has a right of stoppage in transitu, which has been lawfully exercised by the defendant, in consequence of the insolvency of Bullard.

When a contract for the sale of goods is completed by the assent of both parties, the property in the goods is transferred to the vendee, and the price is due to the vendor; but the vendee cannot take the goods until he tenders the price agreed on. And if the price is tendered, and the vendor refuses it, the vendee may seize the goods, or have an action against the vendor for detaining them. Such is the doctrine laid down by Mr. Justice Blackstone, in his excellent Commentaries. 2 Bl. Comm. 448. The principle here stated must apply with equal force, whenever the terms of the sale are completely complied with on the part of the vendee. Therefore where goods are sold to be paid for by a note on time, and the note is given to the vendor, the property in the goods passes to the vendee in the same manner, and under the same circumstances, as it would if the contract were for cash, and the cash were paid. But this doctrine, however, is applicable only in cases where the goods are clearly designated and separated from all others, and according to the sense of the contract, are then deliverable, without any farther act on either side, and are in a state capable of delivery. But if there remains any thing more to be done to designate the particular property, or to complete the rights of the vendee, then the property does not pass, until such acts are done. In short, in such cases there can be no absolute delivery of the goods.

The principal question, in cases of this sort, is to ascertain, whether there has been an actual or constructive delivery; the latter is just as effectual as the former, and may be inferred from circumstances, as well as established by direct proof. In the case of Hanson v. Meyer, 6 East, 614, Lord Ellenborough laid down the true line of distinction. There the vendee agreed to purchase all the starch of the vendor, then lying at the warehouse of a third person, at so much per cwt. by a bill at two months; which starch was in papers, but the exact weight not then ascertained, but was to be ascertained afterwards; and fourteen days were to be allowed for the delivery; and the vendor gave a note, addressed to the warehouse

keeper, directing him to weigh and deliver to the vendee all his starch; and the question was, whether the absolute property in the starch vested in the vendee before weighing. Lord Ellenborough delivered the opinion of the court in the negative. He said, that by the terms of the contract, two things in the nature of conditions or preliminary acts, on the part of the vendee, necessarily preceded the absolute vesting in him of the property contracted for; the first was the payment of the agreed price; the second was, the act of weighing, which, from the terms of the contract, was the means of ascertaining the amount of the price. The weight must therefore be ascertained, in order that the price might be known and paid; and unless the weighing preceded the delivery, it could never, for these purposes, effectually take place at all. And he proceeded to lay down the general doctrine, that "if any thing remain to be done on the part of the seller, as between him and the buyer, before the commodity purchased is to be delivered, a complete present right of property has not attached in the buyer." And he distinguished the case then before the court from that of Hammond v. Anderson, 4 Bos. & P. 69, because there the bacon was sold for a fixed price, and the weighing, there, was for the buyer's satisfaction, and formed no ingredient in the contract between the buyer and the seller. The doctrine of this case has never been denied. It may have been misapplied in Whitehouse v. Frost, 12 East, 614; but it was recognized and acted upon in the fullest manner in Austen v. Craven, 4 Taunt. 644, and White v. Wilks, 5 Taunt. 176, 1 Marsh. 2, and Busk v. Davis, 2 Maule & S. 397. The converse doctrine necessarily flows from the same principle; and that is, that if no farther act remains to be done on either side, and the thing sold is separated and distinguished from all others, as soon as the terms of the contract are completed and complied with, the property passes. See Rugg v. Minett, 11 East, 211; Stoveld v. Hughes, 14 East, 308; Lucas v. Dorrien, 7 Taunt. 278.

If we apply these principles to the present case, it seems to me, that they establish, that there was a complete delivery of the cotton to Bullard. Nothing remained to be done on either side. The bales were all marked and numbered, and sold by their marks and numbers. They were perfectly distinguishable from all the others; and the terms of the contract on the other side were fully complied with. The payment was made in the mode agreed on, by giving a note, payable at a future time. Neither party contemplated any farther act to be done. The vendee contracted for an immediate possession at his own option as to time and place; and the vendor sought no retainer. But it is argued, that the plaintiff never parted with the actual possession, and there-

fore there was no constructive delivery of the cotton to Bullard, because it remained under the plaintiff's care in his warehouse. If the warehouse had belonged to a third person, there would be no pretence to say, after notice and assent by the warehouse man, that the delivery was not complete in construction of law. For such a purpose no manual actual possession is necessary. It is sufficient, if, in the intent of all the parties, the one parts with, and the other receives the property, although there is no change of place. Thus, putting a mark on the goods bought, was in Ellis v. Hunt, 3 Term R. 464, held a delivery. So, weighing the goods by the vendee was held, in Hammond v. Anderson, 4 Bos. & P. 69, to be a complete delivery. In that case the goods were at the wharf of a third person, and the vendor was bound to pay the charge of warehousing for fourteen days after the sale, and before the end of the fourteen days the vendee failed. The court thought there was clearly a delivery. Mr. Justice Heath said, "though the goods continued in the warehouse of the defendant (the wharfinger) after the sale, they were no longer in the possession of the vendor for any purpose whatsoever." Mr. Justice Chambre said, "the payment of the warehouse room by the vendor can make no difference." See, also, Greaves v. Hepke, 2 Barn. & Ald. 131; Spear v. Travers, 4 Camp. 251. So the change of mark, from A to B, on bales of goods in a warehouse, by direction of the parties, has been held by the house of lords, to operate as an actual delivery of the goods. See Stoveld v. Hughes, 14 East, 308, 312.

There is nothing in reason or principle to make the present case different, simply because the bales of cotton remained in the plaintiff's own warehouse. It was a part of the bargain, that they should so remain, and a part of the consideration of the purchase. The warehouse must be deemed, after the purchase, to be virtually the warehouse of Bullard, for this purpose, or so much storage as virtually hired by him. In Stoveld v. Hughes, 14 East, 308, the goods had never been removed from the wharf of the vendor; but the court held, that this was not a circumstance obstructing a constructive delivery. In Elmore v. Stone, 1 Taunt. 458, where a horse was purchased and left in the stable of the vendor on livery, the court thought the delivery complete. Whether that case, upon its own circumstances, can be supported, or is open to the doubt suggested by Mr. Justice Bailey, in Howe v. Palmer, 3 Barn. & Ald. 321, is not material; the principle on which it was decided, is sound; that is, that a continuance of the possession of the vendor does not prevent the delivery being complete, if nothing farther remains to be done on either side, and the possession is by mutual consent. The case of Hurry v. Mangles, 1 Camp. 452, is in point. There the oil, which

was purchased, to be paid for by an acceptance of six months, remained in the vendor's warehouse after the sale, and the vendee paid warehouse rent for it. Lord Ellenborough said, that the acceptance of warehouse rent was a complete transfer of the goods to the purchaser. If I pay, said he, for a part of a warehouse, so much of it is mine. So in Phillimore v. Barry, Id. 513, where goods were purchased at auction, which were in the warehouse of factors, for sale, and they agreed to give storage room for thirty days, Lord Ellenborough held, that the property vested absolutely in the purchasers from the moment of sale, the agreement, as to storage, being introduced for their benefit, and being part of the consideration for the purchase money. This last circumstance pointedly applies to the present case. Green v. Haythorne, 1 Starkie, 447, is to the same effect. The goods remained in the vendor's warehouse by consent, but the court held, that from the time of the sale, the defendant's warehouse was the warehouse of the purchaser. The case is exceedingly strong, as to the law of constructive delivery. See, also, Hunn v. Bowne, 2 Caines, 38; Allen v. Smith, 10 Mass. 308; Damon v. Osborn, 1 Pick. 476. White v. Wilks, 1 Marsh. 2, 5 Taunt. 176, proceeds upon the admission of the correctness of the same doctrine. I forbear to go farther into the cases, because there is no authority, that attempts to overthrow the doctrine.

Now what distinction can there be between the case of payment of rent, and an agreement for warehouse room for the benefit of the vendee, forming a part of the consideration of the purchase? Certainly none in point of law; and I, for one, am not prepared to admit, that if, in the case at bar, the agreement for warehouse room had been after the purchase, without charge, for the mere accommodation of the vendee, and without any agreed right of retainer by the vendor, it would have made any difference in point of law. My judgment accordingly is, that the delivery here was complete, and the property absolutely vested in the vendee.

The other point, as to the lien and right of stoppage in transitu, may be disposed of in a few words. The very contract itself repels the notion of a lien. The goods were deliverable immediately, at the option of the vendee. The payment was by a note on time. Now, giving such a credit for the price, under such circumstances, is decisive against any implied right of retainer or lien for the price. How then can the court assert one, when it is inconsistent with the very terms of the bargain? Besides, if the delivery was complete, there is necessarily an end of the lien. The transit would be ended, and the right of stoppage in transitu, once gone, could not be reassumed. Judgment must therefore be entered for the plaintiff.

Judgment accordingly.