JOHN H. THORNDIKE *vs.* JOHN BATH.

Evidence that a person seeing an unfinished piano in the maker's shop offered to purchase it of him if he would finish it, that the offer was then and there accepted, that a bill of sale was then and there made, that the price was paid at a subsequent day, the piano being left to be finished, will authorize a jury in finding a delivery of the piano sufficient to pass the title as against a subsequent purchaser.

REPLEVIN for two pianos.   The defendant answered denying that the property was in the plaintiff, and asserting property in himself.

At the trial in the Superior Court, before *Putnam,* J., the plaintiff introduced evidence that he bought the pianos of one Lorenzo Matt, the maker, October 10, 1871, and that in November he took, and continued in, actual possession of them, until they were taken from him by the defendant upon a replevin writ

brought by the defendant against Matt, when they were retaken by him from the defendant upon the writ in this action.

The defendant testified that July 27, 1871, Matt applied to him for money, and offered to sell him some pianos which were in process of making at Matt's factory; that Matt and he went together to the factory, and looked at four unfinished pianos; that Matt said he would sell them to him and take his notes at four months in payment, and that they would be finished so that they could be sold by him at a profit before the notes became due, and that he would finish them in good style; that the defendant offered to give $250 apiece for them, if Matt would go on and finish them in good style, so that he, the defendant, could resell them; that Matt accepted this offer, and thereupon made out and gave him a bill of sale of the four pianos, in which they were designated by their numbers; that Matt said he should want the money about the first of the next month; that afterwards, August 8, he, the defendant, gave Matt his notes at four months for one thousand dollars in payment; that these notes were negotiated by Matt and paid by the defendant at maturity; that nothing more was said at the time about finishing the pianos; that he went into Matt's place several times afterwards, and saw the condition the pianos were in, and inquired of Matt when they would be finished, to which Matt would reply that it was a longer job to finish them than he had supposed it would be; that two of the pianos specified in his bill of sale were the two pianos purchased by the plaintiff October 10, 1871, and replevied by him in this action; that the pianos remained in Matt's factory, and Matt continued to work on them until the two pianos replevied in this action were sold to the plaintiff by Matt, and were taken possession of by the plaintiff.

No other evidence of delivery was offered by the defendant.

The plaintiff requested the court to instruct the jury that upon this testimony there was no evidence of a delivery of the pianos by Matt to the defendant. The court declined to do so, but submitted the question to the jury, under instructions which authorized them to find that there was a delivery, provided they found that the sale was *bonâ fide.*

The jury found for the defendant, and the plaintiff alleged exceptions.

*J. L. Thorndike*, for the plaintiff.

*C. Blodgett, Jr.*, for the defendant.

AMES, J.   In order that a sale of personal property should go into full effect, so that it cannot be defeated or set aside in favor of a subsequent *bonâ fide* purchaser of the same property, it is necessary that the first purchaser should show that he had perfected his title by having had actual delivery of it to himself, or by something equivalent thereto. *Lanfear* v. *Sumner*, 17 Mass. 110. *Parsons* v. *Dickinson*, 11 Pick. 352. *Packard* v. *Wood*, 4 Gray, 307. *Veazie* v. *Somerby*, 5 Allen, 280.

But it often happens, especially in the case of bulky articles, that an effectual delivery is made, although it does not appear that the thing sold was removed by the buyer, or came literally into his personal custody.   The books are full of cases in which constructive or symbolic delivery is held to be equivalent to actual delivery, without a visible change of possession.   The thing sold may remain in the hands of the seller, and yet ·the title may pass effectually to the buyer.   This has repeatedly been decided in the case of the sale of a horse, which the buyer leaves in the custody of the seller. *Tuxworth* v. *Moore*, 9 Pick. 347. *Bullard* v. *Wait*, 16 Gray, 55. *Elmore* v. *Stone*, 1 Taunt. 458.   In the last of these cases, the horse had been removed into another stable, but the court say that that fact was wholly immaterial.   It is sufficient if the parties agree that the seller is to retain the possession, not under his lien for the price, but as the agent or bailee of the buyer.

In *Marvin* v. *Wallis*, 6 E. & B. 726, the seller retained the horse in his possession for his own use, by consent, or in other words as a borrower, and it was held that he was a bailee of the buyer, and that the delivery was sufficient.   The possession of the seller continued uninterrupted, but the nature of his holding had changed.

In *Barrett* v. *Goddard*, 3 Mason, 107, goods lying in a warehouse were sold by marks and numbers, and paid for by a promissory note on six months' credit, it being a part of the bargain

that the goods should remain at the option and for the benefit of
the buyer at the seller's warehouse, rent free, for the time being.
It was held by Mr. Justice Story that the delivery was sufficient
against subsequent purchasers, and that the continuance of pos-
session by the seller did not prevent the delivery from being ef-
fectual, if the sale was otherwise complete and nothing remained
to be done on the part of the buyer, and if it was a part of the
bargain that they should remain with the seller.

In *Beecher* v. *Mayall*, 16 Gray, 376, it was held that where
steam boilers were left in the possession of the seller to be re-
paired for the buyer, no further evidence of delivery was neces-
sary, for the seller's possession would be in that case the buyer's
possession.    To the same effect is the decision in *Hotchkiss* v.
*Hunt*, 49 Maine, 213, in which the court say, by Mr. Justice
Kent, that when, by the terms of an agreement of sale, the
article sold is to remain in the possession of the vendor for a
specific purpose, as a part of the consideration, and the sale is
otherwise complete, the possession of the vendor will be the pos
session of the vendee, and the delivery will be sufficient to pass
the title, even against subsequent purchasers.

In the case at bar, the pianos sold to the defendant were desig-
nated by their numbers, and sufficiently identified ; a bill was
made and delivered, the price paid, and the sale has been found
by the verdict to have been *bonâ fide*.    Upon the case as pre-
sented by the exceptions, we think that the jury were authorized
to find that the substance of the transaction between Matt and
the defendant was a sale of the four unfinished pianos by Matt
to the defendant, an exercise of control by the defendant, and a
bailment of the pianos to Matt by the defendant to be finished
for him, and a payment by note of the price of the pianos in their
unfinished state, and of the labor and material to be furnished by
Matt in order to complete them for the defendant.    In this state
of the evidence, we cannot say that the jury might not rightfully
have inferred that the property was so delivered to the defend-
ant as to pass the title, even against a subsequent purchaser.

*Exceptions overruled.*