CHARLES H. GOODWIN *vs.* FREDERICK O. GOODWIN.

Penobscot.    Opinion February 24, 1897.

*Sale.    Delivery.    Possession.    Fraud.*

While it is necessary, in order that an absolute sale of chattels shall be effectual as against second purchasers or creditors, that such sale be accompanied by an actual delivery, consisting of a complete relinquishment of the property by the vendor and as complete an acceptance of it by the vendee; still those acts may be considered as consummated where, after a formal delivery of the property, its possession is retained by the vendor by a contemporaneous agreement with the vendee as his agent or bailee; providing the contract of sale be a bona fide transaction.

A vendor sold five cows to a vendee by a bill of sale in which this agreement occurs:—"I agree to keep said cows for what milk they give without further

expense to said Goodwin [vendee] until the 20th day of March unless Goodwin disposes of them or takes them home before that time." The testimony shows that the cows were either partially or wholly paid for when the bill of sale was made, Feby. 20, 1895, and that on that day, the parties being present at the vendor's barn where the cows then were in their stalls, the vendor pointed out the cows to the vendee and said to him in the presence of a witness, "I deliver you this stock free of all encumbrances." *Held;* that if the jury believed this testimony, and that the transaction was not fraudulent, they were authorized to find that a sale was made accompanied by an actual delivery sufficient as against creditors of the vendor, who attached the cows before they were removed from his possession.

ON EXCEPTIONS BY PLAINTIFF.

This was an action of replevin for four cows, and in which the jury returned a verdict for the defendant. The title was in issue, and both parties claimed under Alphonso S. Rand.

The plaintiff claimed title under a bill of sale dated January 20th, 1896. This bill of sale was not delivered on the day of its date, but within a week thereafter, the payment for the cows being made at the time of the delivery of the bill of sale. At the time of the delivery of the bill of sale, the cows were in Rand's barn, on his farm in Stetson. The plaintiff did not at that time take away the cows, but claimed to have left them in the care of Rand under the arrangement stated in the bill of sale.

The defendant was an execution creditor of Rand, and placed his execution in the hands of a deputy sheriff who, under the defendant's direction, proceeded on the 6th day of February, 1896, to the barn of Rand; and there on execution seized the same cows, put a keeper over them and then advertised them for sale upon execution, and afterward, upon the 13th day of February, sold the same upon execution to the defendant.

The defendant contended that the sale to the plaintiff was fraudulent as to Rand's creditor's, but this contention was negatived by the jury in a special finding.

The defendant further contended that there had been no sufficient delivery of the cows from Rand to the plaintiff, as against him, the defendant; and also contended that he had no notice of any such sale prior to the time of the seizure on execution, and prior to the day of the sale on execution, but admitted that on

the day of the sale, and before the sale on execution, he was apprised of the sale to the plaintiff by being shown the bill of sale. The plaintiff, in turn, contended that there was a delivery, good as against creditors and innocent purchasers, and that the defendant did have notice prior to the seizure, and also contended that notice after seizure and before sale was sufficient.

The presiding justice instructed the jury that, if the defendant's contention was true, the sale to the plaintiff was not valid as against him, the defendant. To this ruling the plaintiff seasonably excepted.

The presiding justice, upon the question of delivery, further instructed the jury as follows:—

" The second point is that, whether this was genuine or not, he was an innocent creditor, having no knowledge of this transaction at the time; that the property was in the possession of Mr. Rand and he thereupon seized it, and that whatever may be Mr. Charles Goodwin's good faith, that it is a case between two innocent parties, and he having first got the possession is entitled to keep it. Well, to repeat: that is the rule of law. If one man purchases a piece of property and leaves it with his vendor, does not take it away or take delivery of it, and then another man, a creditor, finding it there with his debtor, and not knowing of the prior sale, has it seized, then both parties being innocent, the second one is protected because he was the first one who made the blunder by leaving the property where it might be seized by his vendor's creditors. If there be a delivery made, which I will explain a little later, then the purchaser is protected against all parties. If he takes delivery as I shall explain to you, that protects him; or, if the subsequent party creditor or other purchaser had notice of the first sale, the first purchaser is protected. The second purchaser can only protect himself by showing that he had no notice, and that there was not a delivery. Now the defendant says both. He says here there was no delivery and that he had no notice, and if both of these things appear, then no matter how bona fide the sale was, it won't avail the plaintiff because of his neglect to take over the property, or his neglect to give notice of

it. As between parties, when they are concerned themselves, gentlemen, there is no need of delivery. Mr. Foreman, I may have heard of your horse or know about your horse, and I ask you what you will take for him and you say one hundred dollars; and he is down in Bangor House stable now, and I say I will give it, and you say it is a trade. Is it my horse? And I say yes, it is my horse and your money. Now if we both understand that the whole title passes from you to me as between us two, the horse is mine, and if the stable burns up and the horse burns up, it is my loss and not yours. But if, after this talk with me, and after I pay you the one hundred dollars, you meet another man and he says, "I will give you one hundred and twenty-five dollars," and you say, "All right, I will take it," and sell it to him; but now I have bought it once and he has bought it; now if I have left that property there in that stable, there being no signs of its ever being transferred from you to me, and the second man comes and gets it first, he holds it. He was honest. He paid his money as well as I paid my money, and he got the property first and the law assists the most vigilant always. Or, if a creditor of yours, finding the horse there and not knowing of my purchase of it, levies upon it, he will hold it; and if I complain, he will say: "Why didn't you go and get your horse? What did you leave it for?" So you see that while as between the parties there need be no delivery, yet if a purchaser wants to hold the property against other purchasers, or against creditors of his vendor, he must take delivery or else give notice. [So Mr. Foreman, in the case I suppose, while I was safe so far as you were concerned to hold the property against you, if I desired to perfect my title and make it good against other parties, whether your creditors or your subsequent vendees, I was bound to go and get that horse into my own hands,—get it out of your possession into mine in some way;] so that when other parties came to take it, I should say, "Not only did I buy it, but I took delivery." And here the question is not so much about a delivery between the two, as whether or not as against Mr. F. O. Goodwin, Mr. Charles Goodwin had acquired the possession of these cows by the delivery to him by Mr. Rand,

What is a delivery? It must be a transfer from the dominion of one to the dominion of the other. You have a horse in your possession; you control it. Now to deliver it, you must turn it over so that the other man has the control and dominion over it. The ordinary way, of course, is the turning the article over. If I sell my watch to one of the counsel and deliver it to him, the natural way is to take it off and hand it to him. If it is a ship at sea, it is done in some other way by transfer, by bill of sale. If a drive of logs, it is done symbolically, going on to the drive,—on to the lumber pile, and turning it over to the other man for him to take charge of.

Now the plaintiff says even as against other parties and against this defendant, that there was a delivery. And the defendant says, "No." He says that the possession ran right along with Mr. Rand and there was no delivery. And right here, although out of order, I should, I think, recur again to the matter of fraud, the defendant claims that the very fact that the cows were allowed to remain in Rand's stable is evidence of fraud, going so far almost as to say that it was almost conclusive evidence of fraud. But it is not conclusive evidence of fraud; it is a circumstance. The fact that a man claiming under a sale did not take the property, did leave it with his vendor, while it would appear to all the world as belonging to the vendor, is evidence of fraud,—how weighty evidence, how good evidence of fraud, is for the jury to say,—how it affects your minds. It is regarded by the courts always as a little indication of a bogus transaction, but it may be explained satisfactorily, and in this case the plaintiff says he has explained it by showing you the reason of leaving it there,—that it might be cared for by Mr. Rand. [Now, is there in this case sufficient evidence to convince you of a delivery? There must be such evidence, arising from the conduct of the parties, as shows a relinquishment of ownership and possession of the property by the vendor and an assumption of these by the vendee. By the vendor we mean the man who sells, and by the vendee the man who buys. The doctrine of delivery rests upon the ground that the vendee, that is, the purchaser, should have the entire control of the

property, and that there should be some notoriety attending the act of sale, and hence proof of delivery will not be dispensed with on account of the relation of the parties with respect to the property at the time of the sale.] Now was there such turning over of the possession and control of this property from Mr. Rand to Charles Goodwin, as constitutes a delivery as against other parties? Now what did take place? You heard the story of Mr. Goodwin himself who says he took delivery. He does not say how. And you have heard the story of the young man Goodwin. Does the evidence convince you? Is it true, in the first place? Is what they say true? And secondly, if true, does it explain all satisfactorily,—that there was a relinquishment on the part of Mr. Rand of the control and possession on the one hand, and the assumption on the other by Mr. Charles Goodwin? Well, if there was a delivery and Charles Goodwin did all he ought to have done to protect himself against subsequent purchasers and creditors, as I have detailed to you, then the defendant fails on that part of his case ; because, if there was a delivery, an actual turning over, with some degree of publicity, then the defendant, Mr. F. O. Goodwin, must suffer from it. But the want of delivery is not enough to protect Mr. Goodwin, the defendant, from this sale. It must also appear that he had no notice of the sale and for the purposes of this trial, I will rule to you that it must appear that he had no notice before the actual seizure, which was on the sixth day of February. If after he caused it to be seized, he took it into his possession, even though then he was notified, before the day of the sale, it did not matter ; but if when he seized it, it had not been delivered and he had no notice of the sale, he is protected. It is too late, after that, for the purchaser to come and notify him of its having been sold."

To those rulings in the above charge of the presiding justice that are enclosed in brackets and also the following statement by the presiding justice in his charge to the jury (not included in the part of the charge above given) viz:—" If, however, even if it was bona fide, if there was no delivery, and F. O. Goodwin had no notice before the moment of the seizure, then he is protected," the plaintiff seasonably excepted.

The evidence for the plaintiff upon the question of delivery was from the plaintiff himself who testified as follows:—

" Q.  Now you say this bill of sale was signed at night?

" A.  No, sir, that bill of sale was made at my house and carried down to Mr. Rand's and signed down there."

Q.  When?

A.  The next day, or a day or two after, when he delivered me the stock.

Q.  What I want to know is just the date of that.  Was it the twenty-second or twenty-third that Rand signed this?

A.  I could not say exactly; I know it was within a day or two."

" Q.  If you paid him a part at your house, and a part in Bangor, how can you state to the jury that you had paid him all when he signed this bill of sale?

A.  I do state and say that it is so, and he delivered me the stock that day.  I paid him every dollar that I owed him when he signed that."

And from the plaintiff's son, Heman Goodwin, who testified as follows:—

" Q.  You speak about delivery.  I want to find out what they did about that.

A.  I went into the south part of the barn—into the north part of the barn on the south side of the road, and he pointed the cows out—Mr. Rand did, and he says, " I deliver you this stock free from all incumbrance."

*F. J. Martin and W. S. Townsend,* for plaintiff.

Where the seller relinquishes his rights, possession and control as owner of the property, and assumes possession and control as agent, bailee or keeper for the purchaser, in submission to the title, will and control of the purchaser, that is in itself sufficient evidence of delivery as against attaching creditor and bona fide purchasers. The seller need do nothing more.

Counsel cited:—*Hotchkiss* v. *Hunt,* 49 Maine, 213; *Bethel Steam Mill Co.* v. *Brown,* 57 Maine, 9, 22; *Thorndike* v. *Bath,* 114 Mass. 116; *Tuxworth* v. *Moore,* 9 Pick. 347; *Bullard* v. *Wait,*

10 Gray, 55; *Elmore* v. *Stone*, 1 Taunton, 458; *Brooks* v. *Powers*, 15 Mass. 243, 244; *Hardy* v. *Potter*, 10 Gray, 89; Benjamin on Sales, Bennett's ed. (1888) 658; *Ropes* v. *Lane*, 11 Allen, 591; *Stinson* v. *Clark*, 6 Allen, 340; *Green* v. *Rowland*, 16 Gray, 58; *Ingalls* v. *Herrick*, 108 Mass. 351; *Calkins* v. *Lockwood*, 17 Conn. 154; *Meade* v. *Smith*, 16 Conn. 346, 360–367; *Dempsey* v. *Gardner*, 127 Mass. 381.

Notice:—*Haskell* v. *Greely*, 3 Maine, 425; *Ferguson* v. *Rafferty*, 6 L. R. A. 34, 46–47; *Shumway* v. *Rutter*, 8 Pick. 443.

*P. H. Gillin*, for defendant.

Counsel cited:—*Phillips* v. *Hunnewell*, 4 Maine, 376; *Vining* v. *Gilbreth*, 39 Maine, 496; *McKee* v. *Garcelon*, 60 Maine, 165.

The retention of personal property by the vendor raises a prima facie presumption of fraud:—Tiedman, Sales; 1 Benj. Sales 4th Am. Ed. p. 641; Twyne's Case, 3 Coke, 80; *Edwards* v. *Harben*, 2 Term Rep. 587.

SITTING: PETERS, C. J., FOSTER, WHITEHOUSE, WISWELL, STROUT, JJ.

PETERS, C. J.   One Rand, by a bill of sale with an agreement included, January 20th, 1896, sold five cows to the plaintiff at Rand's barn in Stetson, the bill of sale and agreement being as follows:—

"Stetson, Jan. 20th, 1896.

Sold and delivered to C. H. Goodwin.   Five cows Standing in my New Barn in the North end of the Barn meaning No-3-5-6-7-8- Three Five Six Seven and Eight all grade Houlstein Color Four Black and white and one Black.   I have received One Hundred and Twenty-five Dollars in full payment for the same and I agree to Keep Said Cows for what milk they give without further expense to Goodwin until the twentieth day of March unless Goodwin disposes of them or takes them home before that time.

Wit. H. G. Goodwin.

A. S. RAND."

The evidence of delivery came from the plaintiff himself and from his son who witnessed the bill of sale.   The father testified,

that the bill of sale was made at his own house and carried down to Rand's house and signed there; that the signing was done on the next day or within a day or two after the bill was made out and on the day when he took a delivery of the stock; and that he paid Rand every dollar due as the consideration for the sale when the bill of sale was signed.

The son testified to what took place between the parties as follows:—" Q. You speak about delivery. I want to find out what they did about that. A. I went into the south part of the barn—into the north part of the barn on the south side of the road, and he pointed the cows out—Mr. Rand did, and he says, ' I deliver you this stock free from all incumbrance.' "

The cows had not been taken from the barn of Rand at his farm on the sixth day of February, 1896, on which day they were seized upon an execution in favor of the defendant against Rand as Rand's property, and at a later date were sold by the officer to the defendant who took them away. Thereupon the plaintiff replevied the cows from the defendant.

Two questions were submitted to the jury upon which special findings were returned. The jury found that the transaction of sale was not fraudulent as against the vendor's creditors, and also that there was not a valid delivery. The general verdict was therefore necessarily for the defendant. It is contended by the plaintiff that, if the testimony on the subject of delivery was believed by the jury, and there is no sign in the case to the contrary, the two verdicts cannot logically stand together, and that the finding as to delivery was erroneous. The plaintiff further contends that the jury committed the mistake in consequence of a partially erroneous interpretation of the law of the case by the justice presiding. Whether that be so or not is the question presented.

It is not denied by the plaintiff that an actual, and not merely a constructive, delivery was necessary, but he contends that the delivery was actual, although perhaps not a strictly manual delivery.

The reason of the rule requiring delivery throws some light upon the question as to what may constitute a sufficient delivery. In the old case of *Ludwig* v. *Fuller*, 17 Maine, 162, SHEPLEY, J., comments on the subject as follows:—" The reason why a sale, when the price is paid, is not good as respects other parties without a delivery is, that the law regards the purchaser as in fault, and as acting unfairly and fraudulently in allowing the seller, by retaining the possession, to hold out the apparent evidence of ownership, and thereby induce others to purchase or to credit him to their injury." We apprehend that another reason for the rule may be that contracts of sale without delivery are more likely to be uncertain and indefinite as to the property really sold, and that a formal act of delivery would ensure a better identity of the articles intended to be covered by the sale. But the learned judge was speaking of the rule as it formerly stood by the old common law, and, while deprecating a change of the rule, remarks further upon it as follows:—" It must be admitted that the strength of the reasoning upon which the rule rests, that there must be a delivery as respects other parties, has been greatly impaired in this and other states, where the common law has been so modified as to allow the purchaser to prove, that the sale was not fraudulent, where possession did not accompany and follow it. What will amount to proof of delivery, has been the subject of much discussion; and it is rendered more difficult, and would probably be found impracticable to state any general rule applicable to all cases, especially in those states, where the law has been so modified as not to require an actual and permanent change of possession; and where delivery is therefore rather nominal and symbolical than actual. But because the reasoning upon which the rule of law was established does not operate as formerly, and the rule itself is less convenient in practice, that does not authorize a court of law, contrary to a uniform course of decisions, to declare that the rule no longer exists. However one may regret, that a modification of one rule of law should be found to impair the reason upon which another rule was established, it may afford a lesson, that when one is dealing with the common law, stare decicis is judicial wisdom.

And if experience has taught that this modification has been productive of litigation, and afforded greater facilities for the commission of frauds, it would lead to a like conclusion."

So far as the likelihood of fraud existing in cases where the articles sold are not taken away by the purchaser, that objection does not lie here; nor could there be any uncertainty of the property intended to be sold, inasmuch as its description is in writing. And there was no after purchaser to be misled by the seller's having an apparent ownership of the property although there was a creditor to attach it. There certainly was evidence enough to authorize a jury to find an actual delivery. The parties were present with the cows, the sale was expressly made in the presence of a witness, the price was paid, and the seller for a consideration became the bailee of the property for the purchaser. The possession of the cows was no longer in the seller as owner. His possession was thereafterwards the purchaser's possession and not his own. We do not see how any more formal or particular act of delivery would have been of any consequence. It was a natural mode of consummating the bargain, and anything more demonstrative might well excite a suspicion that the sale was merely pretended and fictitious.

We think the jury may have been led by the tenor of some portions of the charge of the judge to believe that all these acts were not of themselves sufficient to constitute a legal delivery. The illustrations which were given of a watch sold and delivered by going out of the seller's into the purchaser's pocket, and of the delivery of a horse made effectual by the buyer's act of taking the horse and leading him away, would tend to incline the jury to suppose that the purchaser in this case should have taken the cows away in order to constitute an actual delivery. The learned judge emphasized to the jury that, in order to constitute sale and delivery, there must be a "relinquishment of the ownership and possession of the property by the vendor, and an assumption of these by the vendee." It was further said that the vendee must have the entire control of the property. But it was not explained to the jury that there might be a relinquishment by the vendor

and an assumption by the vendee of the ownership, control and possession of the property without any removal of the property away, and that the purchaser could have the legal control and possession of the property while in the seller's hands as his agent or bailee, if there be no fraudulent purpose meditated by the parties. Although the doctrine found in the charge, as an abstract proposition, was technically correct, still it was an imperfect and rather inadequate presentation of the rules respecting delivery as applicable to the facts of the case before us; especially when we take in view the position taken in behalf of the plaintiff at the trial. The instructions were absolutely sound as applicable to a case of sale where no explanation is. given or attempted to be given for the possession remaining in the seller's hands, indicating an apparent ownership in him. But the bill of sale and the agreement incorporated therein give sufficient explanation of that fact if the transaction was not fraudulent. Numerous authorities maintain the doctrine that when such a transaction is not fraudulent slight acts are sufficient to prove delivery.

In *Stinson* v. *Clark*, 6 Allen, 340, it is said by Metcalf, J., "that when a contract of sale is bona fide, and payment is made, in full or in part, of the price, slight acts are sufficient to show a delivery that will avail the buyer against the claims of third persons;" and certain pertinent cases are cited in the opinion of the court. The acts in that case showing delivery were not more significant than were the acts here. The statement in that case was that a blacksmith sold to a purchaser sixty horse-shoes for forty dollars, and holding up one of the shoes said:—"Take them; there are the shoes; I deliver them to you." The shoes by agreement were allowed to remain in the shop for some time, and were attached afterwards while remaining there by a creditor of the seller. It was held that the delivery was sufficient as against the creditor.

The doctrine of the case just cited is maintained in many cases, a few of which only need be examined in corroboration of our view of the pending question. In *Calkins* v. *Lockwood*, 17 Conn. 154, the parties to a sale of iron met at the place where the iron

was, and agreed upon the price and the mode of payment, and thereupon the seller said to the buyer:—"I deliver you the iron at that price." The iron remaining a while unmoved a creditor of the seller attached it, but the court held the delivery to be sufficient. In *Cutter* v. *Copeland*, 18 Maine, 127, the court, upon facts not unlike the present, announced the statement that there was no legal objection in a mortgagee's making the mortgagor his agent to hold possession of the goods mortgaged, the court in effect remarking that in such case the apparent possession of the one would be the real possession of the other. And this principle was adopted in the subsequent case of *Hotchkiss* v. *Hunt*, 49 Maine, 218, where the question was exhaustively examined, and the following rule as to delivery enunciated: "When, by the term of an agreement of sale, the article sold is to remain in the possession of the vendor, for a specific time, or for a specific purpose, as a part of the consideration, and the sale is otherwise complete, the possession of the vendor will be considered the possession of the vendee, and the delivery will be sufficient to pass the title even as against subsequent purchasers." That case was approvingly cited by the Massachusetts court in *Thorndike* v. *Bath*, 114 Mass. 116, the court quoting from the opinion in that case and relying on that and quite a number of other pointed and relevant decisions in support of the rule thus enunciated. In the case last cited it was held that evidence, that a person seeing an unfinished piano in the maker's shop, offered to purchase it of him if he would finish it, that the offer was then and there accepted, that a bill of sale was then and there made and that the price was paid at a subsequent day, the piano being left to be finished, will authorize a jury in finding a delivery of the piano sufficient to pass the title as against a subsequent purchaser. The case of *Barrett* v. *Goddard*, 3 Mason, 107, is apropos. In that case goods lying in a warehouse were sold by marks and numbers, and paid for, it being a part of the bargain that the goods should remain at the option and for the benefit of the buyer at the seller's warehouse, rent free, for the time being; and it was held by Judge Story that on these facts the delivery was sufficient as against subsequent

purchasers. To the same effect in *Beecher* v. *Mayall*, 16 Gray, 376, where steam boilers were purchased and left in the seller's possession for the accommodation of the purchaser. And many other significant cases might be added. But we deem these cited to be sufficient.

*Exceptions sustained.*