904

CENTRAL PASTO VIEJO, INC., demandante y apelada, v. A. PÉREZ & HNO. y MERCEDES OJEA, demandados y apelante el último.

No. 5631.—*Sometido:* Mayo 11, 1932.   *Resuelto:* Abril 20, 1933.

*Arturo Aponte*, abogado del apelante; *J. Henri Brown, C. Ruiz Nazario, G. E. González* y *G. Benítez Gautier*, abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este es un pleito que según se desprende de su título fué incoado por Central Pasto Viejo contra A. Pérez & Hno. En su alegato, el apelante llama nuestra atención al hecho de que la parte demandada original a veces se describía como A. Pérez & Hno., a veces en plural o en otra forma, mas la diferencia, para cualquier fin, carecía de importancia, y podría ser armonizada bajo la doctrina de *idem sonans.*

En 1° de junio de 1926, Alberto Pérez,. a nombre de A. Pérez & Hno., otorgó escritura traspasando ciertos bueyes, caballos y algunos accesorios a la Central Pasto Viejo. Hubo prueba tendente a demostrar, y así lo halló la corte inferior, que la demandante Central Pasto Viejo marcó el ganado con las iniciales C. P. V. en el chifle derecho y que entonces dejó toda la propiedad a A. Pérez & Hno. para la recolección de la cosecha. En julio de 1927, Mercedes Ojea, fiador de A.

Pérez & Hno. para con Schlüter & Cía., conforme la prueba tendió a demostrar, pagó el importe de la fianza a Schlüter & Cía. y tomó o recibió de A. Pérez & Hno. 24 bueyes.

La demanda en este caso se inició para recobrar los 24 bueyes, así como todos los otros animales o bienes personales descritos en la demanda. El márshal aparentemente no halló ninguna otra propiedad y finalmente tomó posesión de los 24 bueyes que se hallaban en aquel entonces en poder de Ojea o que por lo menos habían sido depositados por él en la finca de A. Roig. Más tarde, con motivo de una fianza, o por alguna otra causa, los bienes pasaron y permanecieron en poder de la Central Pasto Viejo.

Los autos demuestran que después que se inició el pleito, Mercedes Ojea alegó ser dueño de dichos bueyes. De conformidad con los artículos 171 *et seq.* del Código de Enjuiciamiento Civil, archivó una moción para que se le permitiera intervenir en el caso como demandado. Solicitaba específicamente que se le permitiera intervenir, uniéndose como demandado, y defender el litigio como tal demandado, tal cual si hubiese comparecido originalmente en el litigio y se hubiese librado emplazamiento contra él.

A. Pérez & Hno. no dió pasó alguno en el caso y se dictó sentencia en rebeldía en su contra. Posteriormente la corte dictó sentencia a favor de la demandante Central Pasto Viejo sobre la cuestión de reclamación y entrega planteada por Ojea.

En apelación, la parte apelante, probablemente por inadvertencia, dejó de archivar un señalamiento de errores separado, pero no obstante consideraremos algunas de las cuestiones más importantes suscitadas por ella.

■ El primer señalamiento de error, según lo narra el apelante, fué que la demanda no aducía una causa de acción. El apelante admite no haber suscitado esta cuestión en la corte inferior, mas sostiene el privilegio otorgado por el artículo 109 del Código de Enjuiciamiento Civil y por la jurisprudencia de esta corte. Bajo estas circunstancias, y aun

generalmente, un señalamiento de error no debe limitarse a decir que no existía causa de acción, sino que debe indicarse el defecto específico impugnado.

██ El supuesto defecto es que la demanda no alegaba que la demandante tenía derecho a la posesión de los bienes al tiempo de iniciarse la acción; que la legación de que estaba en posesión de ellos en época anterior no era suficiente, sino que el derecho a la posesión debe aparecer en la fecha en que se instituye el litigio. Cita los siguientes casos a ese efecto: *Vanalstine* v. *Whelan*, 135 Cal. 233; *Affierbach* v. *McGovern*, 79 Cal. 268; *Fredericks* v. *Tracy*, 98 Cal. 658; *Truman* v. *Young*, 121 Cal. 490 y *Holly* v. *Heiskell*, 112 Cal. 174.

Se verá que en uno de estos casos la corte dijo que la presunción de continuidad no era aplicable. En otras palabras, que la presunción sentada en el inciso 31 del artículo 102 de la Ley de Evidencia y en el artículo 461 del Código Civil, no tiene que ver nada con las alegaciones de una demanda.

En uno o más de los casos citados, la demanda menciona específicamente determinada fecha y los casos podrían ser distinguidos en alguna otra forma, y no podemos resolver que ellos están en conflicto con la existencia de una causa de acción en favor de la demandante.

La demanda alegaba que A. Pérez & Hno. vendió a la Central Pasto Viejo los siguientes bienes, (describiéndolos); que dicha demandante dejó los bienes en poder de ellos hasta que finalizara la zafra de 1927. Cuando en una demanda se menciona una escritura de venta y en ella se alega que los bienes se dejaron en poder del vendedor, ésta aduce suficientemente el derecho del demandante a obtener posesión de los bienes reclamados y nada hallamos en los casos de California o de esta corte que esté en conflicto con esta conclusión. Además, al terminar la descripción de los bienes, la demandante también dijo, "siendo todos estos bienes propiedad de la mencionada corporación." Si bien la demanda no es tan técnica como podría serlo, todo el que la lea llegará a la

conclusión de que la demandante alegaba tener la posesión de los bienes al iniciar su acción.

■ Además, y especialmente en un caso en que no se presentó excepción previa alguna en la corte inferior, la demanda podría ser considerada como enmendada en apelación. *Ismert Hinke Milling Co.* v. *Muñoz*, 37 D.P.R. 819; *Merino* v. *Globe Rutgers Fire Insurance Co.*, 35 D.P.R. 397; *El Pueblo* v. *Sucesión Valdés*, 31 D.P.R. 224; y *Heirs of Franceschi* v. *González*, 62 F. (2d) 748. Por otra parte, creemos más bien que cualquier duda que pudiera existir respecto a la suficiencia de la demanda, se esfumó en la controversia posterior sobre reclamación y entrega.

Los señalamientos segundo y tercero son insuficientes. En el primero de ellos, se dice que la Corte de Distrito de Humacao erró al admitir cierta prueba en evidencia; y en el último, que la corte cometió error al dejar como evidencia cierta prueba inadmisible. Es muy probable que hubiera cierta cantidad de prueba de referencia que no debió haber sido admitida por sobre las objecciones del apelante, mas convenimos con la apelada en que el error no fué perjudicial y no le daremos ulterior consideración a falta del debido señalamiento de errores.

■ ■ ■ El cuarto señalamiento de error es como sigue: "La corte inferior erró al resolver en su sentencia que se trata de un caso de doble venta y que a virtud de ella deben ser preferidos los demandantes." La primera parte de este señalamiento de error se refiere a la identificación de los bienes y a que en realidad no había habido una venta. Hemos examinado la prueba y la opinión de la corte inferior y estamos enteramente convencidos de que los bueyes fueron suficientemente identificados como parte de los vendidos originalmente a la Central Pasto Viejo de acuerdo con la escritura. En verdad, según veremos, creemos que hubo claramente un cambio material de posesión.

La otra parte del cuarto señalamiento de error es quizá la más importante. El apelante alega que no hubo un tras-

paso suficiente de posesión de A. Pérez & Hno. a la Central Pasto Viejo y cita el artículo 1376 del Código Civil a ese efecto, como sigue:

"Si una misma cosa se hubiese vendido a diferentes compradores, la propiedad se transferirá a la persona que primero haya tomado posesión de ella con buena fe, si fuere mueble.

"Si fuere inmueble, la propiedad pertenecerá al adquirente que antes la haya inscrito en el registro.

"Cuando no haya inscripción, pertenecerá la propiedad a quien de buena fe sea primero en la posesión; y faltando ésta, a quien presente título de fecha más antigua, siempre que haya buena fe."

Si se estuviese juzgando este caso en los Estados Unidos continentales tal vez surgirían mayores dudas. Los hechos de este litigio en algunas jurisdicciones constituirían un fraude *per se,* es decir, cuando el primer adquirente deja los bienes ostensiblemente en poder del vendedor, un comprador inocente será protegido. *Davis* v. *Bigler,* 1 A. R. 396; *Norton* v. *Doolittle,* 32 Conn. 405; *Flanigan* v. *Pomeroy,* 85 Minn. 264; *Webster* v. *Peck,* 31 Conn. 495. Algunos Estados han adoptado estatutos según los cuales es necesario que el cambio de posesión sea más o menos continuo u ostensible. La idea original de que lo ocurrido aquí era característico de un fraude *per se,* no ha sido seguida muy generalmente. Aun en el Continente la regla en la mayoría de las jurisdicciones es hacer que la posesión continuada por parte del vendedor original suscite una presunción *juris tantum* solamente o dejar la cuestión de fraude *vel non* al jurado. En una nota que aparece en 5 English Ruling Cases, pág. 40, se hace un resumen de la jurisprudencia americana, así:

"La doctrina moderna en Inglaterra fué aprobada por el Tribunal Supremo de los Estados Unidos allá para el año 1857 en el caso de Warner v. Norton, 20 Howard, 448, donde el juez McLean dijo (pág. 260): 'Pocas son las cuestiones en derecho que han dado lugar a mayor conflicto de ley que la que está bajo nuestra consideración. Mas, por muchos años la tendencia ha sido, tanto en Inglaterra como en Estados Unidos, considerar la cuestión de fraude como un hecho que debe someterse al jurado de conformidad con las instrucciones

de la corte. Y el peso de las autoridades parece ser ahora en este país favorable a esa posición. Cuando la posesión de los efectos no acompaña la escritura, ésta es prima facie fraudulenta, pero está sujeta a las circunstancias de la transacción, que puede tener un fin inocente.' ''

Hemos examinado el caso de *Warner* v. *Norton,* 20 Howard 448, donde se exponen estos hechos, que son expresados en forma similar en 27 C. J. 574. Otras autoridades que demuestran las reglas generalmente aplicables son: *Thorndike* v. *Bath,* 114 Mass. 116; *Dodge* v. *Jones,* 7 Mont. 121; *Waldie* v. *Doll,* 29 Cal. 556; *Bullard* v. *Wait,* 16 Gray (82 Mass.) 55; *Benjamin on Sales,* edición 17ª., nota a la pág. 489; *Wilson* v. *Walrath,* 24 L.R.A. (N. S.) 1127 y nota; 27 C. J. 574; 12 R.C.L. 555.

En este caso hubo prueba de la cual la corte tenía derecho a creer que la demandante no solamente recibió una escritura de compraventa, sino que también tomó posesión del ganado originalmente, y lo marcó con las iniciales C. P. V. Esto probablemente hubiese bastado en el Continente para justificar la conclusión de la corte.

En la nota que aparece en *Benjamin on Sales,* en la página 176, hallamos lo que sigue:

''Mas siempre que se ha efectuado una venta *bona fide* de efectos personales y se ha pagado el precio, bastan pocos actos para demostrar una entrega válida, aun contra las reclamaciones interpuestas por terceros.''

Sin embargo, en Puerto Rico no tenemos la misma fuente histórica ni los precedentes relativos a la presunción de fraude. El artículo 1376 del Código Civil concede la propiedad de los bienes a la persona que primero toma posesión. Cualquier conflicto existente entre dos compradores que adquieran del mismo vendedor se resuelve categóricamente en favor del primero que tome posesión. Por tanto, si la corte inferior estuvo en lo cierto al apreciar la prueba, la Central Pasto Viejo, al recibir la escritura de compraventa y marcar el ganado, fué la primera en tomar posesión.

Convenimos con el apelante y con las citas que hace de Scaevola, segunda edición, Tomo 8, pág. 260, en que el mero traspaso simbólico provisto en el artículo 1365 del Código Civil, no podría subsistir ante las disposiciones más positivas del artículo 1376.

El quinto señalamiento de error se refiere a la apreciación de la prueba hecha por la corte inferior. En parte de su alegato, el apelante pone seriamente en tela de juicio la cuestión de si los bueyes fueron marcados por la demandante con las iniciales C. P. V. en el momento en que se supone tomó posesión originalmente. Empero, la corte, a instancias del apelante, hizo una inspección ocular del ganado. En la transcripción que tenemos ante nos, no aparece constancia de este examen ocular, mas en su opinión el juez dice: ''. . . y a más como hecho de posesión material el que se refiere a haber marcado con sus propias iniciales el ganado en cuestión, cuyo hecho pudimos observar al practicar la inspección ocular en la cual comprobamos tales marcas en los chifles, algunas casi imperceptibles con signos de haberse intentado borrar las mismas.'' La sugestión de que la Central Pasto Viejo ordenó que estas marcas fuesen hechas después de haber tomado posesión del ganado, una vez embargado ,en el presente litigio, no merece seria consideración. De seguro la Central Pasto Viejo no hubiese tratado de borrar sus propias marcas.

Durante la vista de este caso el apelante insistió mayormente en que los bueyes no habían sido identificados suficientemente. Él discute extensamente las varias marcas que las reses tenían y la falta del márshal o de la demandante de describir el ganado debidamente en sus respectivos escritos, diligenciamiento y demanda. Estamos de acuerdo con el apelante en que la descripción por lo menos en el diligenciamiento del márshal, tal vez pudo ser más específica, mas no tenemos dudas respecto a la identidad del ganado que en realidad fué transferido a la Central Pasto Viejo.

El sexto señalamiento de error es al efecto de que A. Pé-

rez & Hno. no estaba en posesión del ganado en el momento en que se inició este litigio y que la demandante tenía conocimiento de ello. Es evidente que el defecto de la demanda, de existir, fué subsanado por la comparecencia del demandado Ojea, quien se hallaba en posesión de los bueyes y solicitó se le hiciese parte demandada.

■ La precursora del presente derecho de reclamación y entrega de bienes muebles fué la acción de *replevin* y las autoridades tienden a demostrar que en ese procedimiento podía iniciarse una acción contra una persona que originalmente estuviera en posesión de los bienes, y que éstos podían ser recobrados, en poder de un cesionario fraudulento. Colegimos de dichas autoridades que sólo es necesario mencionar en la demanda la persona que originalmente estaba en posesión. *Sinnott* v. *Feiock,* 165 N. Y. 444, 53 L.R.A. 565; *Nichols* v. *Michael,* 23 N. Y. 264.

Podríamos decir de paso que probablemente algunas de las manifestaciones de uno o más de los testigos no eran dignas de crédito, mas nada hay en los autos que demuestre que la corte diera a ellas un valor que no merecían. En realidad estamos bastante convencidos de que la corte inferior tenía derecho a creer que la Central Pasto Viejo tomó posesión de los bueyes y los marcó una vez efectuada la venta. No tenemos duda alguna de la primera venta *bona fide* de parte de A. Pérez & Hno. a la Central Pasto Viejo.

En distintas partes de su alegato, el apelante da mucho énfasis al hecho de que en la demanda se admite que los bienes fueron dejados en poder de A. Pérez & Hno., así como que el administrador admitió que los bueyes se dejaron en poder de dichos A. Pérez & Hno. Entre la demandante y la demandada original era innecesario alegar todas las condiciones bajo las cuales los bueyes se dejaron en poder de esta última. Las supuestas admisiones de la demanda y de la contestación fueron suficientemente explicadas cuando la cuestión respecto a quién tomó posesión primero, fué presentada a la Corte de Distrito de Humacao, o sea, al tomar

posesión del ganado y marcarle los cuernos, según resolvió la corte inferior.

*La sentencia apelada debe ser confirmada.*